RAINEY *v.* THE STATE.

94  599
104  82
94  599
f114  268

The evidence showing that the defects in the mare traded by the ac-
cused to the prosecutor were patent, and that they were actually
discovered by the latter before the trade was concluded, the con-
viction of the accused of being a common cheat and swindler was
not warranted, although he represented the mare to be "all right."
This case differs from *Tatum* v. *The State,* 58 *Ga.* 408, where the
blindness of the animal represented by the accused to be sound
was neither apparent nor discoverable by ordinary inspection.

BLECKLEY, C. J., dissenting.                    *Judgment reversed.*
   June 4, 1894.

Indictment for cheating and swindling. Before Judge
SMITH. Irwin superior court. April term, 1894.

The testimony on which defendant was convicted was
as follows: Taylor testified: Defendant with Zack
Pate came to my house and stayed all night. I told
defendant I wanted to trade my mule for a good horse;
that the mule would run away, and I was afraid of him.
Defendant told me he had a good mare he would trade
me, that had but one eye, the other having been knocked
out. Nothing more was said until the next morning
when defendant and I went to feed, and I thought I
discovered something wrong with one of the mare's legs,
and so told defendant. He replied, "No, there is nothing
the matter with her; it is the way she is standing," and
slapped the mare. She commenced cutting up. After
breakfast Pate and I drove her about five miles. When
we returned, defendant and I traded horses, traded even.
He told me the eye had been knocked out, and that he
could tell when an eye had been doctored by spitting at
the eyes. He told me the mare was all right. I traded
upon his honor. Cannot remember exactly how long I
kept the mare before I carried her back to him. When
I carried her back I told him the mare was weak eyed,
that she had a big leg, and that I wanted my mule back
or damages. He told me he would pay no damages,

that the mare was all right when he let her go, that he had traded the mule off. I did not know that he knew that anything was wrong with the mare, of my own knowledge. I never saw the mare before that evening. Pate and I drove her before I traded for her. I never got out of the buggy after I left home. I trade horses sometimes. The reason I did not take the mare back sooner, I was trying to find out for certain that defendant knew at the time the mare was not all right. The mule was my property, and was worth $125. I had been offered that much for the mule. The mare had a big leg; one eye was out, the other was weak and ran water, and she could not see good out of it.—Griffin testified: I was present the morning the trade was made; they traded upon honor. Defendant represented the mare to be all right; if not, Taylor could return the mare and get his mule. I drove the mare the day the trade was made, and discovered that day the mare had a big leg, and from her dodging and travel discovered her to be weak eyed. I think there was $50 difference between the two.—Wood testified that he knew the mare about a year before, and that she went blind and had a big leg; but he did not know that defendant knew her.—Wheeler testified: I saw the mare after Taylor traded for her. One of her legs was then swollen, or larger than the other. After they had traded, defendant told me that, by G——, he had made the "dambest best trade the other day with Lam Taylor I ever made in my life, and there was not a dam thing the matter with the mare except the scratches."

There was testimony for defendant, that there was nothing wrong with the mare while he owned her, except the loss of one eye.

BUSBEE, CRUM & BUSBEE, for plaintiff in error. TOM EASON, solicitor-general, by HINES & FELDER, contra.