### 472.   GODDARD *v.* THE STATE.

The essential requisites in the offense of cheating and swindling by false representations are: (*a*)   That the representations were made; (*b*) that they were knowingly and designedly false; (*c*) that they were made with intent to deceive and defraud; (*d*) that they did deceive and defraud; (*e*) that they related to an existing fact or past event; (*f*) that the party to whom the false statements were made, relying on their truth, was thereby induced to part with his property. It is incumbent upon the State to prove all of these elements of the offense, and if any one is lacking in the proof the offense is not made out.

Applying the facts proved to the above legal requirements, the verdict
    in this case was without evidence to support it, the conviction of the
    accused was contrary to law, and the trial court should have granted
    him a new trial.

Accusation of misdemeanor, from city court of Cartersville—
Judge Foute. April 20, 1907.

Argued May 27,—Decided June 19, 1907.

*Joe M. Moon,* for plaintiff in error.

*T. C. Milner, solicitor,* contra.

HILL, C. J. The defendant was convicted of cheating and
swindling, in the city court of Cartersville, on evidence substan-
tially as follows: The accused was the owner of a light bay me-
dium-sized horse, which he sold to the prosecutor for $35. At the
time of the sale he represented to the prosecutor that the horse
"was not over 10 or 12 years old, and was a good corn and fodder
eater, and was sound in every respect." The prosecutor saw the
horse before he bought him, and drove him to his buggy. He
was apparently very old, and was very poor. The accused told the
prosecutor that his condition was due to the fact that a negro had
made a crop with him and had fed him on Johnson grass; that
all he needed was "feed," was a good horse, and "had all the gaits
and a pair of draw-bars thrown in," and that he was worth $45,
and if he kept on fattening as he had done in the one month in
which he had had him he would be worth $75. The prosecutor
told the accused, after examining the horse, that "he seemed to
be older than 10 or 12 years, and looked like he might be 16 years
old;" but the accused insisted that he was only 10 or 12 years
old. The prosecutor asked the accused if the horse could eat corn
and fodder, and he replied that he could eat anything. The prose-
cutor and the accused hitched the horse to a buggy, and, after
driving him awhile, told the accused that "he moved very well,"
and that he would give him $35 for the horse. The accused
wanted $45. A friend of the accused, standing near, listening
to the barter, advised the accused to take the $35, and the accused,
after hesitating awhile, consented to do so, and delivered the horse
to the prosecutor. The prosecutor paid for the horse and took
him home. This was on Saturday. On the next Monday the
horse was returned to the defendant by the prosecutor, who stated
that the representations that the horse was a good corn and fodder

cater, and was only 10 or 12 years old, were untrue, and demanded the return of his money, which was refused. On Saturday night and Sunday morning the prosecutor and his son gave the horse corn and fodder to eat, but he did not eat any of it. The prosecutor stated that he relied solely upon the representations made to him by the defendant as to the age of the horse and as to his ability to eat, but that he afterwards learned that the horse was 15 or 16 years old and could not eat corn and fodder. The prosecutor stated that, if he had known these facts, he would not have paid anything for the horse and would not have had him as a gift. One witness, besides the prosecutor, stated that the horse ate corn with difficulty and "stemmed" his fodder. This was substantially the case as made by the State. Several witnesses for the defendant testified that the defendant was approached by the prosecutor and asked to sell him the horse; that the defendant was reluctant to sell the horse, stating to the prosecutor that he was in a bad condition because of bad treatment, and was not fit to sell, but that he thought he was worth $45; that he told the prosecutor that the horse had been fattening rapidly while in his possession, and that he had fed him on meal from the mill; that the horse was sound, and that he did not know his age, but that he was apparently an old horse; that he was told by the party from whom he got him that he was about 12 years old; that, while the accused told the prosecutor that he fed the horse on meal from the mill, he also told him that the horse could eat corn and fodder, as he had fed him on some. Several of these witnesses also testified that they fed the horse on corn and fodder after the prosecutor had turned him loose, and that he ate both. All the witnesses stated that the horse was old and very poor. One witness stated that after the prosecutor returned the horse, and the accused refused to take him, and he was turned loose without an owner, he took possession of the horse, and for two months fed him on corn and fodder and other feed; that the horse fattened about two pounds a day, and got in good condition, and he "swapped him" for another horse, worth $35; and that he got in cash $10 besides. The foregoing is a substantial statement of all the material evidence in the case.

In repeated rulings of this court it has been announced that the verdict of the jury will not be disturbed if there was any evi-

dence to authorize it; but that if the verdict was entirely without
evidence to support it, it will be set aside as contrary to law.
Several exceptions are made to the charge of the court and to the
refusal to charge as requested, and these exceptions are urged
very forcibly by the able attorney for the plaintiff in error; but
the view that we entertain of this case on the merits makes it
unnecessary for us to consider any of these specific exceptions.
We think the verdict against the defendant, even under the evi-
dence for the State, is wholly unwarranted.   To support a con-
viction for cheating and swindling, as charged in this case, there
are certain essential facts which it is incumbent upon the State to
prove.     Were the alleged representations made?     Were they
knowingly false?   Were they made with intent to deceive and de-
fraud?   Did they deceive and defraud?   And was the prosecutor
induced by such representations, believing in their truth, to part
with his property?   All these elements must exist before the of-
fense is complete.     There was evidence that the representations
were made by the defendant to the prosecutor, to wit, that the
horse was a good corn and fodder eater, that he was not more than
10 or 12 years old, and that he was sound in every respect.   Were
these representations false, and known to be so by the defendant
when he made them?   That the horse was sound in every respect
was affirmed by all the witnesses, and was undisputed.     The
statement that he could eat corn and fodder was abundantly shown
by actual experiments.   The only testimony to the contrary was
that of the prosecutor and his son that he did not eat the corn
and fodder given to him by them on two occasions.   There was
no proof that the corn and fodder which they gave to the horse
was in good condition; and, in view of the evidence that the horse
always had eaten corn and fodder, it is fair to presume that its
condition on the two occasions when he failed to eat them was
the reason for such failure, and not the horse's inability to eat
such feed.   The statement as to the age of the horse was appar-
ently only the opinion of the defendant, for he said he had only
owned the horse a short time; but it is fair to presume that the
statement as to the age was not made with intent to deceive the
prosecutor, for the defendant gave him every opportunity to de-
termine that question for himself.   He turned the horse over to
the prosecutor to drive, and assisted the prosecutor in making an

examination of the horse. The age of the horse was a patent defect, discoverable by ordinary inspection. All the witnesses testified that the horse, in the language of Dr. Johnson, describing an old maid, was "old, ugly, and miserably poor." Besides, the statement of the prosecutor shows that he was not deceived as to the age of the horse. After making an examination he stated that he believed the horse was more than 12 years old, and looked like he might be 16 years old. "The evidence showing that the defects in the mare traded by the accused to the prosecutor were patent, and that they were actually discovered by the latter before the trade was concluded, the conviction of the accused of being a common cheat and swindler was not warranted, although he represented the mare to be 'all right.' " *Rainey* v. *State,* 94 *Ga.* 599, 19 S. E. 892.

We have preferred to go fully into the merits of this case, because we are convinced from a careful consideration of the evidence that the conviction of the defendant was wrong. All the facts and circumstances clearly indicate that the defendant did not use any "deceitful means or artful practice" to induce the prosecutor to purchase the horse. By general consent, much latitude should be allowed in trading horses; but the evidence in this case failed to show that the defendant availed himself of any such latitude, but showed, on the contrary, that he was a fair and honest trader, and the reason, apparently, for dissatisfaction with his purchase by the prosecutor, was because his family did not like the horse, or, in the language of his son, "would not have such an old, poor horse." We think the verdict of the jury was unsupported by the evidence, and that the defendant should have been granted a new trial.          *Judgment reversed.*