### 2389.  MEACHAM *v.* THE STATE.

1. The rules applicable to briefs of evidence incorporated in bills of exceptions do not apply to petitions for certiorari, and a petition for certiorari is not subject to dismissal upon the ground that the evidence adduced upon the trial is not properly briefed.  A petitioner for cer-

tiorari, if he sets  forth plainly what transpired upon the trial; may make his statement of the evidence as full as the facts will justify, without the apprehension of any other penalty than the probability of confusing the reviewing court by an unnecessary mass of irrelevant matter.

2. One can not be defrauded and cheated by the violation of a promise to perform an act in the future. The deceitful means or artful practice by which one may be defrauded and cheated must have relation to an existing fact or a past event. Ordinarily one who is induced to act by the promise of another to do a particular act in the future acts upon the promise, and not upon the false representation of fact; and while the violation of the promise is immoral, it is not a criminal offense.

3. One who has by a valid assignment sold personal property to another, and who thereafter, without the knowledge and consent of the purchaser, fraudulently converts the property to his own use, may be guilty of larceny, but can not be convicted of cheating and swindling, unless deceitful means and artful practice induced the purchaser to buy something which it was not within the power of the vender to sell.

Certiorari; from Fulton superior court—Judge Pendleton. December 5, 1909.

Argued March 8,—Decided May 12, 1910.

*Thomas B. Brown, Virgil Jones,* for plaintiff in error.

*C. D. Hill,* solicitor-general, *Lowry Arnold, D. K. Johnston,* contra.

RUSSELL, J.  1. Upon the call of this case a motion was made to dismiss the writ of error, upon the ground that the evidence in the record was not briefed as required by law. The only statement of the evidence is embodied in what purports to be a copy of the petition for certiorari which was presented to the judge of the superior court, and which he declined to sanction. The petition for certiorari is properly incorporated in the bill of exceptions. As the issuance of the writ of certiorari was denied, the petition for certiorari should appear before this court in the exact form in which it was presented to the judge of the court below. If alterations of the petition were permitted, it would be, in some instances at least, impossible for this court to determine whether the lower court erred in the judgment refusing to sanction the petition. The rule which requires a proper brief of the evidence in writs of error generally has no application to petitions for certiorari. The petition must be incorporated in the bill of exceptions, and there is no rule requiring the testimony adduced upon the trial in the inferior judicatory to be briefed at all. The petitioner for certiorari is expected to set forth plainly and distinctly what occurred

upon the trial, and he may exercise this privilege ad libitum, even to the extent of presenting what Judge Bleckley calls a rigmarole of questions and answers, objections, remarks of the counsel, etc., with no other penalty attached than the probability of irretrievably confusing the court. For this reason the motion to dismiss can not be sustained.

2. The plaintiff in error was convicted of the offense of cheating and swindling by using deceitful means and artful practice, in violation of the provisions of §670 of the Penal Code. It appears that after having sold an account for his wages as a fireman, and after having authorized the purchaser, as his attorney in fact, to sign any and all checks, vouchers, receipts and acquittances necessary to be signed in order to collect the amount, he collected it himself. We fail to see wherein any deceitful means or artful practice was used which can be said to be the direct cause for the prosecutor's advancing the money of which it is alleged he was defrauded. To conform with the ruling of this court in *Crawford v. State*, 2 *Ga. App.* 185 (58 S. E. 301), the accusation in the case at bar alleges that the defendant, when he made the assignment, did not intend to allow King Brothers & Co. to collect the wages covered by it, but intended to collect them himself. It is further alleged, that King Brothers & Co. believed and relied upon the statements contained in said application and assignment, to the effect that they were authorized to collect the wages therein mentioned; and that the statements were false, and made for the purpose of deceiving them. The principle announced in the *Crawford* case, supra, is entirely sound and well settled, but neither the allegations of the accusation nor the evidence in the present case measure up to the rule announced in that case. Nothing is better settled than that the false representations which afford the basis of a prosecution for cheating and swindling must relate to existing facts or events in the past. A representation as to a fact which it is assumed will exist in the future, or a promise which the promisee understands must be performed in the future, does not afford a basis for a criminal prosecution; because it is apparent that he who is influenced by a representation as to a fact which he knows the future must evolve, contingent upon a future action of the promisor, does not primarily rely on, and is not influenced by, an existent condition, but depends upon the confidence of the promisee

in the ability and integrity of the promisor.   In case the antici-
pated event does not happen or the promise is not fulfilled, or the
pledge or future performance is not redeemed, it is a case of mis-
placed confidence, but not a case of false representation; and the
promise, if there was no false statement of past or existent facts,
can not be said to be deceitful means or artful practice, within the
definition of the Penal Code, because the party to whom the repre-
sentation was made had as full opportunity of determining for
himself the likelihood or probability of what the future would de-
velop as he who made the promise; and this irrespective of whether
the promisor intended or did not intend to deceive the opposite
party.   The reason of the rule is that if the party to whom the
representation was made had full knowledge of the real condition
of affairs, or chose to rely upon the promise as to a future contin-
gency, he is not deceived by deceitful means or artful practice
(because he knows all of the facts and their true relation), but
his loss results from his absolute confidence in the party making
the promise.

   The accusation in this case states that the defendant represented
that he .was 21 years old, that he was employed by the Southern
Railway Company, and that he was employed during the month
of June, 1909, and, while so employed, earned as salary or wages
the sum of $30, that there were no offsets or counter-claims
against the account, nor any orders, drafts, garnishments, or at-
tachments outstanding, in any way affecting said account, that the
account was just, true, and unpaid, and had not been sold or
transferred.   None of these representations or warranties were
false.   So far as appears from the record each of them was true.
Upon this statement King Brothers & Co. purchased the defend-
ant's account for wages; and, in order to effectuate the purchasers'
right to collect, the defendant authorized them to sign such neces-
sary vouchers, receipts, or acquittances as were proper.   The au-
thorization of the purchaser to collect the account for wages was
not in any sense a representation of a fact.   It was not artful prac-
tice.   The purchasers of the account, if they sustained any loss at
all, did not sustain loss by reason of this authorization; because
the prosecutor, according to the recitals of ,the assignment, had
already parted with his money before the assignment was made.
So far as the writer is concerned, he does not look with favor upon

the purchase of accounts for wages where the practical result is to afford a means by which one can be compelled to pay an exorbitant price for the use of money earned by his labor, through the purchase of a part or all of his account at a reduction below its face value, no matter how such conduct may be intended. The practical effect is to extort a usurious rate of interest, whether that be the intention of the parties or not. Interest is nothing more than a charge or price for the use of one's money; and although there may be an absolute sale of an account for wages or salary, yet where it appears that the sale is made solely for this purpose of realizing sooner than the account would ordinarily be paid, it is apparent that the seller loses the difference for the sole purpose of obtaining the use of his money earlier than he would otherwise have received it, and that he sacrifices by the sale a portion of the account in his favor merely to pay for the use of the remainder during the interval between the time when he receives the purchase-price and the time when he can reasonably anticipate the payment of his account. We realize that it is contrary to public policy to place restrictions on one's right to dispose of any property he may possess, at his own discretion and upon terms satisfactory to himself, and yet the writer can not see any difference, in its practical effect upon the wage-earner, between paying a usurious rate of interest upon a loan and sacrificing a portion of the chose in action in order to be enabled to use the remainder. But regardless of my personal views, and yielding full judicial assent to the prior decisions in which it has been held that only the sale of wages where the practical effect is to work a deduction greater than 5 per cent. per month is included within the inhibition of the statute which forbids usury by means of the device of purchasing accounts, it is plain in this case that if the defendant sold the account to King Brothers & Co., it became from that instant their property, and if thereafter the defendant wrongfully and fraudulently converted this personal property to his own use, he might be guilty of simple larceny, but could not be guilty of cheating and swindling, for the reason that if any false representations of fact were made, which were the occasion of loss and damage to the purchaser, if any loss is attributable to his reliance upon the assignment and to the subsequent violation of its terms by the defendant, these can not be classed as antecedent

causes of the prosecutor's loss. We think the judge of the superior court should have sanctioned the certiorari, and upon this record, if it had been sustained by the answer, should have granted a new trial.                    *Judgment reversed. Hill, C. J., dissents.*

HILL, C. J. ' I do not concur in the opinion of my brethren that the facts alleged and proved in this case do not show the offense of cheating and swindling, under the general section of the Penal Code, §670. The accusation was evidently framed in accordance with the views of this court as expressed in the case of *Crawford* v. *State*, 2 *Ga. App.* 187 (58 S. E. 303). We then thought those views were "sound and ·. . fully supported by the decision of the Supreme Court in *Garner* v. *State*, 100 *Ga.* 257 [28 S. E. 24]"; and I see no reason to change the opinion then expressed. The majority of the court in this case reaffirm the soundness of the principle announced in the *Crawford* case, but think that "neither the allegations of the accusation nor the evidence in the present case measure up to the rule announced in that case." I am wholly unable to see any distinction between the facts of this case and the illustration given in that case of what would constitute a violation of this section. As held in the *Crawford* case, section 670 very greatly enlarges the common-law offense of cheating and swindling by false tokens, false pretenses, and false representations. It seems to have been intended to supply deficiencies which existed in the common law in reference to this offense, as well as to embrace all other offenses of like character which were not specifically covered by other sections of the code. The language of this section is exceedingly broad and comprehensive: "*any* deceitful means or artful practice" by which another is "*defrauded and cheated*" is within its terms. The words "deceitful means and artful practice" are words of general use, and should be given their ordinary significance. The jury in each particular case are to determine whether the means or practice used to cheat and defraud was "deceitful or artful," in the ordinary signification and definition of these terms. I think that if the accused, at the time he sold and assigned the salary he had earned to the prosecutor and authorized the latter to collect it from his employer, the railroad company, on "pay-day," had the intent, nevertheless, to himself collect it and convert it to his own use, and did accomplish this intent, he was guilty of a violation of this section. It is true

he made no distinctly false representation of any fact to the pros-
ecutor. The "deceitful means" and the "artful practice" which
he employed consisted in using facts to enable him first to get the
prosecutor's money, and subsequently to get the full amount of his
salary from his employer. It can not be denied that by these
means he was enabled to get $63,—$30 from the prosecutor and
$33 from his employer,—when he was only entitled to $30. The
plan was very simple, was calculated to allay suspicion, and was,
it seems to me, a form of artifice cunningly adopted to first get
the prosecutor's money and then to collect from the employer the
money which had been sold to the prosecutor. If this conduct of
the defendant does not constitute "deceitful means and artful
practice," I confess I do not understand the meaning of these
words. To violate this statute it is not necessary, in my opinion,
that any verbal false representations or pretenses should be made.
The offense can be committed by deceitful conduct as well as by
deceitful words. *Jones* v. *State,* 97 *Ga.* 430 (25 S. E. 319, 54 Am.
St. R. 433).

The majority of the court base the decision upon the construc-
tion that the defendant made merely an implied promise that he
would not, after having sold his salary, himself collect it from
his employer, the railroad company, and that in doing so he only
broke his promise, and a broken promise is not a false pretense.
Of course, it is well settled that a mere promise relating to the
future can not be the basis of a prosecution for this offense; but,
as was said by the Supreme Court in *Holton* v. *State,* 109 *Ga.* 127
(34 S. E. 358), and by Mr. Bishop in his work on Criminal Law
(vol. 2. §224), "where there is both a false pretense and a promise
which acted together on the mind of the person defrauded and in-
duced him to part with a thing of value, and he would not have
done so on the promise without the pretense, such a pretense, if
false, is sufficient to support a conviction for being a common cheat
and swindler." And as also said by Mr. Bishop in the same work,
"it would be difficult to find in actual life any case wherein a man
parted with his property on a mere representation of fact, whether
true or false, without an accompanying promise." Here there was
blended with the implied promise of the accused,—that he would
not himself collect the salary from the railroad company, but
would permit the prosecutor to do so,—the deceitful means and

artful practice of selling his salary and giving written authority to the prosecutor to collect it. This apparently honest conduct, relied on by the prosecutor, induced him to pay to the accused the amount of the salary so bought, thirty days before he could have gotten it from the employer. I think this case in principle is very similar to that of *Garner* v. *State,* 100 *Ga.* 257 (28 S. E. 24). There the accused, with intent to cheat and swindle a named person, bought from him a horse and gave him a check in payment, took possession of the horse, and stated at the time of the purchase that the check would be paid on presentation (what was this but a promise?), and after obtaining possession of the horse, with intent to cheat and swindle the purchaser, he went to the bank and stopped payment of the check so that the seller was in fact defrauded. Suppose that instead of stopping payment of the check he had simply drawn all of his money out of the bank, leaving nothing to pay the check he had given to the seller for the horse, would it have been any less a case of cheating and swindling? And would there not have been just as plainly a promise, made or implied, when he gave the check, that it would be paid at the bank, and that he had funds there to pay it, as there was in this case that he would permit the prosecutor to collect the salary from the railroad company? I can not see any substantial difference in principle in the two cases.

It is insisted by my associates that if the accused was guilty of any offense, it was the offense of simple larceny, that the title to his wages had passed to the prosecutor under the assignment, and therefore, that, when he subsequently collected his salary, it was the wrongful and fraudulent taking of the personal property of the prosecutor. Was it the property of the prosecutor,—that is, did he have such a legal title to the property as would have authorized him to sue the railroad company for it? This would depend upon whether the assignment or sale covered the entire amount of salary which had been earned by the accused at the time when he made the sale or assignment, or whether it covered only a part of the amount which had been earned. I think it fairly deducible from the facts in the record that it was a partial assignment of the salary which had been earned, and that the prosecutor had only an equitable title to the amount which had been sold to him, and could not have maintained a suit against the railroad

company for it.  There is no evidence that the railroad company gave assent to the assignment, and, as repeatedly held by the Supreme Court, and by this court in the case of *Central Ry. Co. v. Dover*, 1 *Ga. App.* 240 (57 S. E. 1002), where there is a partial assignment of a chose in action, the purchaser has only an equitable title, which can only be enforced by equitable petition, with the debtor and assignor both parties.  If, therefore, the assignment was only as to a part of the salary earned, the money was not the personal goods of the prosecutor, but was only property to which he had an equitable title; and the definition of simple larceny is, "the wrongful and fraudulent taking and carrying away . . of the personal goods of another, with intent to steal the same." Penal Code, §155.  Of course, this would include personal goods to which one has the right of possession.  There being in the record ample evidence of the defendant's fraudulent intent when he assigned his salary and received the money therefor from the prosecutor, I am very clearly of the opinion that he was properly convicted of the offense of cheating and swindling, under §670 of the Penal Code.