## 49735. CROY v. THE STATE.

ARGUED OCTOBER 7, 1974 — DECIDED NOVEMBER 7, 1974.

*Greene, Buckley, DeRieux & Jones, James A. Eichelberger, Gregory J. Digel,* for appellant.

*John T. Strauss, District Attorney,* for appellee.

CLARK, Judge.

Defendant, having been convicted of two counts of theft by deception under paragraph (a) of Criminal Code § 26-1803 and thereby sentenced to two consecutive nine-

year terms, appeals. His motion for new trial as amended, in which, inter alia, he assigns error on the trial court's refusal to grant a directed verdict of acquittal, was denied. This appeal from that judgment presents nine assignments of error.

The first enumeration requires an examination of the transcript as it avers "The State's evidence showed that the defendant was not guilty of a crime of knowingly and intentionally making a misrepresentation as to an existing fact or past event within the meaning of Code Ann. § 26-1803 (a)."

The indictment was in two counts and used the language contained in paragraph (a) of § 26-1803 of the Criminal Code. Each count charged defendant with the offense of "Theft by Deception" in obtaining automobiles from a named retail automobile dealer "by the following deceitful means and artful practice: created an impression of an existing event, to wit: did give him a bank draft which was false and which the accused knew and believed to be false. . ." The first draft was for $17,625 and the second was in the amount of $17,000. A total of 20 automobiles was here involved.

The state's case depends upon the deceived dealer's testimony. He had known and sold used cars to the defendant over a period of three or four years. During that period they created a practice which constituted a deviation from the usual custom of such dealings between automobile sales concerns. The usual procedure is to enclose the titles to the automobiles inside an envelope "sight draft" for the purchase price of the automobiles. Here, however, the seller trusted the buyer to the extent that he not only delivered the titles but had agreed to wait a period of time, generally a week, before presenting the draft for payment.

Whereas the previous sales had involved a smaller number of cars the instant transactions involved 20 cars by reason of the seller liquidating used car inventory. After negotiations the parties closed their transaction on July 5, 1973. On that day, the accused gave the seller two sight drafts. In response to the question "Was there any request by him as to the manner in which they were to be presented?" the prosecuting witness answered "Yes.

He asked us for one week on each one, which we had done before. Normally, I would have been unimpressed, but we usually gave him a week." (T. 40).

Evidence was also introduced which demonstrates that only three days before the transaction under consideration, defendant opened a checking account at the East Point branch of the Citizens & Southern Bank; that defendant had no other accounts at that branch; and that after an initial deposit of $45 no debits or credits were entered on defendant's ledger until July 28, 1973, at which time $40.55 was withdrawn.

As to the issue of presentment and payment, an East Point branch vice-president testified that when the first sight draft was presented, he attempted to contact the defendant to determine his payment intentions, but was unable to do so; that the next day the defendant discussed the situation with the vice president in the bank and said he would make a deposit to cover the draft; and that no such deposit was ever made by the defendant despite repeated telephonic assurances that he would do so.

1. Subsection (a) of Code Ann. § 26-1803, for the violation of which the accused was convicted, provides: "A person commits theft by deception when he obtains property by any deceitful means or artful practice with the intention of depriving the owner of said property. A person deceives if he intentionally: (a) Creates or confirms another's impression of an existing fact or past event which is false and which the accused knows or believes to be false." As the language embodied within this subsection solely contemplates a deceitful representation as to "an existing fact or past event," we think a false promise of future performance cannot be grounds for a subsection (a) theft by deception prosecution. Compare Code Ann. § 26-1803 (a) with Code Ann. § 26-1803 (e). And see *Cross v. State,* 126 Ga. App. 346 (190 SE2d 561), wherein this court noted the distinction between these subsections.

Out statutory interpretation is in accord with prior cheating and swindling case law upon which Code Ann. § 26-1803 (a) is based. See *Cross v. State,* supra, p. 349. In *Gilligan v. State,* 64 Ga. App. 311 (13 SE2d 112), for example, this court noted: " 'One essential element in the

offense of cheating and swindling by false representations is that the representations must relate to an existing fact or past event. A representation, even though false and fraudulent, relating to the future can not be the basis of a prosecution for cheating and swindling. *Ryan v. State,* 45 Ga. 128; *Miller v. State,* 99 Ga. 207 (25 SE 169); *Dickerson v. State,* 113 Ga. 1035 (39 SE 426); *Edge v. State,* 114 Ga. 113 (39 SE 889); *Goddard v. State,* 2 Ga. App. 154 (58 SE 304); *Meacham v. State,* 7 Ga. App. 713 (2) (68 SE 52).' *Vaughn v. State,* 36 Ga. App. 675 (137 SE 854)."

Did the accused create the impression of an existing false fact in violation of Code Ann. § 26-1803 (a) as charged in the indictment? We think not.

The indictment specified that the fraudulent impression allegedly created by defendant stemmed from the giving of false bank drafts which the defendant knew to be false. However, the evidence adduced by the state shows defendant did not represent that he had sufficient funds to cover the drafts on the date of their issue; he merely promised to cover the drafts when they were to be presented in the future. This promise of future performance cannot serve as the basis of a subsection (a) theft by deception prosecution. See *Lindsey v. State,* 107 Ga. App. 112 (129 SE2d 395); *Neidlinger v. State,* 17 Ga. App. 811 (88 SE 687). As noted in LaFaver and Scott, Criminal Law § 92, "If. . . the check is postdated, or if the giver of the check states that he has not enough money in the bank to cover it though he expects to have by the time the check is presented for payment, there can be no implied representation that there is now enough on deposit to cover the check."

"As stated in *Meacham v. State,* 7 Ga. App. 713, 716, supra: 'The reason for the rule [that false representations which afford the basis of a prosecution for cheating and swindling must relate to events in the present or in the past] is that if the party to whom the representation was made had full knowledge of the real condition of affairs, *or chose to rely upon the promise as to a future contingency,* he is not deceived by deceitful means or artful practice (because he knows all of the facts in their true relation), *but his loss results from his absolute*

*confidence in the party making the promise.' " Lindsey v. State,* supra.

Although evidence was introduced tending to show that the defendant may have misrepresented his financial stability, the state's reliance upon *Vickers v. State,* 124 Ga. App. 752 (186 SE2d 157), is not well founded. In *Vickers,* the "Defendant was indicted for obtaining an automobile from a dealer by deceitful means and artful practice 'in that [he] did create an impression of an existing fact, to wit: that he was financially able to give a check for the automobile and had the money deposited in a bank in order to do so, which impression was false and which the accused knew and believed to be false. . .' " No such allegation appears in the indictment sub judice. The sole fraudulent act with which this defendant is charged is the giving of a false bank draft.

2. The district attorney pointed out the flimflam nature of defendant's operations in starting on a small scale over a number of years and his use of the envelope sight draft method of payment without enclosing titles during these earlier transactions supplemented by the nominal bank deposit and printed draft form. He also emphasizes defendant's four felony convictions in various federal courts. We recognize this deplorable state of affairs which led the defrauded dealer to say that "He had confidence in him" (T. 41) and that "As far as I was concerned he was as honest as the day was long." Obviously, the prosecuting witness had no knowledge of the defendant's criminal record but our information concerning the accused must not lead us to decide cases except in accordance with applicable legal principles. As was said by Justice Pound, dissenting in People v. Gitlow, 234 N. Y. 132 (136 NE 317): "Although the defendant may be the worst of men . . . the rights of the best of men are secure only as the rights of the vilest and most abhorrent are protected." This sentiment was echoed by Justice Ingram in *Grace v. State,* 231 Ga. 113, 128 (200 SE2d 248) thusly: "The rights of the best among us are in jeopardy if we fail to protect the rights of the worst among us."

3. "[W]hen there is no conflict in the evidence and it clearly demands a verdict of acquittal as a matter of law there is a *duty* upon the trial judge to grant a motion

for a directed verdict of acquittal and his failure to do so will constitute reversible error on appeal." *Merino v. State,* 230 Ga. 604, 605 (198 SE2d 311).

4. In view of our ruling on the first enumeration of error it becomes unnecessary to consider the remaining eight assignments.

*Judgment reversed. Bell, C. J., and Quillian, J., concur.*