## 65120. RAY v. THE STATE.

Quillian, Presiding Judge.

The present defendant along with a co-defendant was indicted on seven counts of theft by taking and one count of conspiracy to commit theft by taking. After a trial the jury returned a verdict of guilty as to all eight counts. From the judgment entered on the verdict defendant appeals. *Held:*

The evidence showed that during the Fall of 1978, the defendant Ray and his co-defendant John McCormick (who is not a party to this appeal but whose appeal may be found in *McCormick v. State*, 163 Ga. App. 267 (293 SE2d 35)) operated two businesses involved in the

buying and selling of used cars: Auto's Unlimited, Inc., and White Automotive Enterprises. In September of 1978, a checking account in the name of Auto's Unlimited was opened under Ray's signature with the Citizens Bank of Dallas, Georgia. Subsequently on October 31, 1978, White Automotive Enterprises began a checking account to which both defendants were signatories with Cobb Bank and Trust. At the time the account of Auto's Unlimited was opened, Ray told Georgia Lindsey, the head teller with the Citizens Bank, that he would be negotiating sight drafts through the bank. Ms. Lindsey informed Ray that he would receive immediate credit for these sight drafts. She further testified that, subsequently in the regular course of business, Ray would deposit the drafts and she would debit the Citizens Bank's collections account and put the money into the account of Auto's Unlimited; then she would mail the draft to the bank on which it was drawn for collection. After the bank certified draft for the funds was honored, it was deposited to the collections account at the Citizens Bank.

Meanwhile, as the witness Lindsey related, immediately after depositing the sight draft or drafts with Citizens Bank the defendant Ray would often obtain a cashier's check on the Auto's Unlimited account.

As was brought out by evidence adduced at the trial, sight drafts are a common method of effectuating an automobile sale where the seller is unable to immediately physically deliver the certificate of title and other pertinent papers to the vehicle which is the subject of the sales transaction. The purchaser pays for the vehicle with a sight draft which is a draft written on an envelope. The seller takes the sight draft, procures the necessary papers such as title, release of lien, etc., places them in the envelope, seals it, and then tenders the envelope either to his bank which forwards the draft to the payor's bank or makes tender to the bank on which the draft is drawn. In any case, the payor's bank delivers the draft to the purchaser/payor who examines the contents and if the required title and other papers are present then authorizes his bank to honor the draft. The seller or the seller's bank then receives payment of the amount of the draft.

At trial, Ken Thigpen, president of Citizens Bank, testified that the proper banking procedure was not to give immediate credit to deposited sight drafts, but to send them on to the payor's bank for collection. Only when the payor's bank honors the draft should the payee bank credit the payee's account. Mr. Thigpen explained his bank had erroneously offered immediate credit to Auto's Unlimited. Apparently this practice was followed because the Bank negotiated sight drafts in this manner with a long time customer Paul Cooper, owner of Dallas Auto Auction, who introduced Ray to the Bank

Officers.

From September through October of 1978, the defendant Ray for Auto's Unlimited negotiated numerous sight drafts reflecting auto sales through the Citizens Bank. During early November of 1978, the defendant Ray presented to Ms. Lindsey seven drafts (the subject of the seven counts of the indictment) payable to Auto's Unlimited which were drawn on the Cobb Bank and Trust account of White Automotive and were signed by defendant McCormick. Each of these drafts was sealed, evidencing something bulky inside and with the description of a car on the face of each draft (as were the prior sight drafts which had been negotiated through Citizens Bank). Boxes were checked on the face of three of the drafts indicating the certificate of title as well as a release of lien, a tax receipt and an odometer disclosure to the described car were inside. Ms. Lindsey gave the Auto's Unlimited account immediate credit and forwarded each of the seven drafts to the Cobb Bank and Trust for collection. They were returned uncollected by Cobb Bank and Trust. Subsequently, it was revealed that White Automotive's account had been closed out as of November 17, 1978. The statement concerning Auto's Unlimited's account with the Citizens Bank, which was introduced into evidence, showed that funds credited to that account on the seven sight drafts had been withdrawn from the account.

Richard Clark, vice-president for Citizens Bank, became aware of the seven returned drafts and made efforts to contact the defendants Ray and McCormick. He testified the bank had relied on what was "checked" on the drafts and the fact that these were viable sight drafts. Therefore, he was not immediately concerned when the drafts came back since he felt that the bank was protected because he assumed that titles were inside the sealed drafts. However, after efforts to reach the defendants Ray and McCormick failed, the drafts were opened in late December and found to contain pieces of paper unrelated to the automobile sales indicated on the face of the drafts. It was also ascertained that White Automotive had ceased to operate as a business.

1. "The language embodied in the clause, 'regardless of the manner in which said property is taken or appropriated,' in Code Ann. § 26-1802(a), renders the section sufficiently broad to encompass thefts or larcenies perpetrated by deception as prohibited under § 26-1803, and theft by conversion, as prohibited under § 26-1808, the punishment for all of which is identical, as provided in § 26-1812." *Jones v. State,* 137 Ga. App. 612, 613 (4) (224 SE2d 473). Accord, *Scott v. State,* 149 Ga. App. 59 (1) (253 SE2d 401); *Stull v. State,* 230 Ga. 99, 101 (1) (196 SE2d 7). The defendant's argument that since the evidence shows at most a theft by deception he could

not be convicted of theft by taking is therefore without merit.

2. In *Croy v. State,* 133 Ga. App. 244, 246 (1) (211 SE2d 183) it was held that since the language of Code Ann. § 26-1803 (a) defining theft by deception "solely contemplates a deceitful representation as to 'an existing fact or past event,' we think a false promise of future performance cannot be grounds for a subsection (a) theft by deception prosecution. Compare Code Ann. § 26-1803 (a) with Code Ann. § 26-1803 (e)." Our decision therein approved the prior case law upon which Code Ann. § 26-1803 is based and quoted from *Gilligan v. State,* 64 Ga. App. 311 (13 SE2d 112) wherein it was noted: " 'One essential element in the offense of cheating and swindling by false representations is that the representations must relate to an existing fact or past event. A representation, even though false and fraudulent, relating to the future can not be the basis of a prosecution for cheating and swindling.' " Accord, *Elliott v. State,* 149 Ga. App. 579 (254 SE2d 900).

Counsel for defendant urges that the bank relied on the future promise that the draft would be honored or that if not the defendant would make it good. What this argument overlooks is that the bank also was entitled to rely on the contemporary validity of the sight draft offered for deposit.

The deceitful means or artful practice that causes one to part with his property need not be the sole inducement. Proof that false representations were relied upon as part of the inducement authorize a conviction although there may have been other contributing inducements including promises as to acts to be performed in the future. In short, the inducement relied upon for conviction need only be a part of the inducements under which the defrauded person parted with his money. *Suggs v. State,* 69 Ga. App. 383 (1) (25 SE2d 532); *Smith v. State,* 116 Ga. 587 (1) (42 SE 766); *Harris v. State,* 141 Ga. App. 213 (233 SE2d 21). Also, as held in *Suggs v. State,* 69 Ga. App. 383 (4), supra, " 'the fact that the party alleged to have been defrauded did not exercise reasonable diligence in preventing the fraud affords no defense to the accused.' "

Code Ann. § 26-1803 (Ga. L. 1968, pp. 1249, 1290) proscribes "deceitful means or artful practice" and provides in subsection (b) that "A person deceives if he intentionally creates or confirms another's impression of an existing fact or past event which is false and which the accused knows or believes to be false . . ."

As was pointed out by this court in construing the predecessor to our current law, " 'any deceitful means or artful practice' may embrace either false and fraudulent representations, or other deceitful and fraudulent conduct which cheats and defrauds the prosecutor. In other words, under this particular Code section, one

may be guilty of cheating and swindling although he made no representation whatever to the person defrauded." *Hadden v. State,* 73 Ga. App. 23, 24 (35 SE2d 518). In passing upon the 1968 codification of our present Criminal statutes it was succinctly held: "creating a false impression does not necessarily require a false statement..." *Vickers v. State,* 124 Ga. App. 752, 753 (186 SE2d 157).

In the case sub judice there was evidence which showed the defendant presented seven sealed drafts to the bank. Each of the sealed drafts contained a description of the purported automobile involved. On the face of three of the drafts, "boxes" were checked to indicate that the titles and other documents relating to the described automobiles were inside. The others, although not checked, were bulky and obviously contained papers.

Here sight drafts had been negotiated through the Citizens Bank for a period of time apparently with minimal problems. The papers which gave rise to seven counts of the indictment were tendered for the purpose of obtaining money from Citizens Bank by having Auto's Unlimited's account credited by the amount of each sight draft. These instruments delivered to the Bank were impliedly proffered as valid sight drafts which would be accepted by the payor and thus honored by the paying bank. In fact they contained therein no documents relating to the automobile described on the outside and were commercially worthless.

Therefore, from the record there was evidence that the defendants intentionally created a false impression as to existing facts.

The evidence was sufficient to enable a rational trier of fact to find the defendant guilty beyond a reasonable doubt.

3. Where the evidence shows that the crime was complete a verdict of guilty of conspiring to commit the crime is not authorized and must be set aside. *Evans v. State,* 161 Ga. App. 468, 471 (288 SE2d 726); *McCormick v. State,* 163 Ga. App. 267, supra; *Crosby v. State,* 232 Ga. 599, 602 (3) (207 SE2d 515); *Price v. State,* 247 Ga. 58, 61 (273 SE2d 854).

Accordingly, the sentence as to count 8 (conspiracy) must be set aside. The judgment is therefore affirmed as to counts 1 through 7, but reversed as to count 8.

*Judgment affirmed in part and reversed in part. Shulman, C. J., and Carley, J., concur.*

DECIDED JANUARY 11, 1983.

*George A. Pennebaker,* for appellant.

*William A Foster III, District Attorney, Jeffrey P. Richards, Assistant District Attorney,* for appellee.