## 72605. GORDON v. THE STATE.
(352 SE2d 582)

BEASLEY, Judge.

Appellant and two others were charged with conspiracy to defraud the state (OCGA § 16-10-21 (a)) and two counts of theft by

taking (OCGA § 16-8-2) in what has since become known as the "Capitol photography scandal." Appellant brings this appeal from his conviction of all three counts.

1. Appellant first maintains that the evidence presented against him at trial was not sufficient to support his thefts, but the record belies this contention. His primary position is that he was actually tried for theft by deception, and that requisite elements of that crime were absent.

Defendant was indicted by the grand jury for theft by taking, a crime prohibited by OCGA § 16-8-2. The state sought to prove the commission of this crime. The defendant offered no evidence. The trial court instructed the jury in terms of the elements of theft by taking. No one asked for a charge on theft by deception, a specific type of theft by taking and a violation of OCGA § 16-8-3. The defendant expressed satisfaction with the court's announcement that it would charge the jury on theft by taking. The jury found the defendant guilty of theft by taking, and the court sentenced the defendant for having committed that crime.

Theft by taking is committed when property is taken, "regardless of the manner in which the property is taken or appropriated." The grand jury did not choose to confine the indictment to the narrow category of theft by deception, which is only one manner of theft, a manner which has a statutory definition more restrictive than ordinary usage of the word.[1]

While in common parlance it may be said that defendant stole the state's money by deception, defendant has deceived himself when he purports to show that the manner employed to effect defendant's scheme does not fit the statutory definition of theft by deception. As shown, that was not the question, so his whole premise is faulty.

The question is whether defendant committed theft by taking in any manner whatsoever. The general statute makes the theft, not the manner, the focus of its attention. It is true that the Code in Chapter 8 of Title 16 carves out certain manners of theft for specific prohibition. Theft by deception is one; other "manners" or methods are by conversion, by receiving stolen property here or in another state, by bringing stolen property into the state, by shoplifting, and by extortion. These are not exclusive or exhaustive of the ways creatively devised by people to achieve theft. And so the legislature, recognizing that it cannot give an appellation or a circumscribed definition to each of the myriad and even yet-to-be-concocted schemes for depriving people of their property, leaves the general statute to prohibit any

---

[1] See, e.g., the definition in *Webster's New Intl. Dictionary, 2d ed.*: "1. Act of deceiving or misleading; fact or state of being deceived or misled. 2. That which deceives or is intended to deceive; an artifice, cheat, or fraud; as, deceptions that mislead the traveler."

taking of another's property with criminal intent, "regardless of the manner." It is often the case that the manner cannot be neatly bundled up and named by one word, or described by a statutory definition whose necessarily prospective creation does not quite fit it. Hence the general statute, to protect any kind of property from any manner of theft. Committee Notes, Code Ann. Ch. 26-18, Theft; *Jones v. State*, 137 Ga. App. 612, 613 (4) (224 SE2d 473) (1976); *Clark v. State*, 138 Ga. App. 266, 269 (226 SE2d 89) (1976).

The question, then, is whether defendant took state money unlawfully, with the intent to deprive the state of it. It does not matter, under a theft by taking charge, *how* it was done, but only *that* it was done; the *how*, that is, the manner of the taking, tends to prove that in fact there was a taking and that it was with criminal intent. Therefore the analysis of whether what defendant did constitutes theft by deception or not is not an issue in this case.

In determining whether the evidence supports the conviction, we must ask whether a rational trier of fact could have found the essential elements of theft by taking, beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SC 2781, 61 LE2d 560) (1979); *Wimberly v. State*, 162 Ga. App. 785 (293 SE2d 403) (1982). In doing so, we must view the evidence in the light most favorable to the verdict, construing every inference and presumption in favor of it. *Harris v. State*, 234 Ga. 871, 873 (218 SE2d 583) (1975); *Boyd v. State*, 168 Ga. App. 246, 248 (1) (308 SE2d 626) (1983). In this case particularly, inferences play a significant role. The jury is authorized to draw any and all reasonable ones. *Garner v. State*, 83 Ga. App. 178, 184 (63 SE2d 225) (1951).

Here there was evidence that the defendant methodically and deliberately obtained taxpayer money which he knew he was not entitled to, by taking advantage of a lax payment system. There was evidence that his long experience with the system which did not check that what the vendor said was delivered was in fact ordered and delivered, and which did not verify that what was charged was in fact the price quoted, was used by defendant to introduce and perpetuate the scheme. There was evidence that this knowledge-bearing experience, coupled with the trust of naive state employees who depended on his word with respect to the accuracy and legitimacy of the invoices, was abused so as to achieve the unwitting payment of exorbitantly inflated invoices.

The state proved that the amount charged the state was not in keeping with the prices quoted for the business which was to be received and was in fact received from the state for calendar year 1983. Defendant was billed $30,744 for Crown work and $45,110 for Photo Service work by Toco Color Lab, which firm actually did all the work. Comparing its own prices with defendant's price list, Toco testified

that defendant's prices as quoted by him to the state as the basis for what he would charge, was about 10% higher than Toco's. But, based on what he did in fact charge the state, it paid a markup of over 400%, far distant from the neighborhood of 10%.

There was evidence, therefore, that defendant did not charge what he said he would charge. He easily covered up this gross readjustment by obtaining receipts submitted separately from the work delivered, not itemizing the invoices, not attaching the Toco invoices, and destroying the Toco invoices. The absence of the means for verification was in effect acceded to by the absence of requirements for verification. Of this situation, evidence showed, he took advantage to his enrichment of over $270,000.[2] It is even admitted on appeal that: "The State paid Appellant almost $400,000 for color film processing that cost him approximately $76,000 at Toco Color Labs," and "Appellant does not dispute the evidence of what his actual markup was."

It mattered not whether, in arriving at the unsupported figure on each invoice, he charged more for each photo than the price list showed, or he figured in more photos than were actually ordered and delivered, or he just arrived at an arbitrary higher figure. The state was not required to show which, because a theft may occur "regardless of the manner."

The fact that the state's fiscal practices resulted in setting the stage for this activity does not render defendant's preying upon it noncriminal, any more than the carelessness or gullible belief of a flim-flam victim would remove the criminality of the flim-flam. See, e.g., *Benson v. State*, 150 Ga. App. 569 (1) (258 SE2d 156) (1979).

Nor was the jury required to accept any of appellant's positions. His argument, that the high invoices were justified by the high volume of business and that what was charged was for actual deliveries at the quoted prices, is gutted by the evidence that a much smaller amount of work was in fact done, as Toco's records showed. Appellant's inconsistent explanation to the investigators, which was introduced in evidence, was that the gross discrepancy was caused by Toco's undercharging him.

It is true that the state linked the amount of work done, with the amount that was to be charged for it, to the amount actually charged and paid, by a circuitous route. Nevertheless, the jury was authorized to conclude from this circumstantial evidence that defendant committed theft by taking. The *manner* was by knowingly submitting grossly inflated invoices, knowing they would be paid because of the absence of verification procedures, and they *were* paid, to the detriment of the state fisc; the *manner* was by submitting false invoices, false in that

---

[2] The amount of restitution ordered on these two counts.

they were in an amount far in excess of that agreed upon by acceptance of the price list which was to be, and which was believed to be, the basis for the invoices.

Under the theft by taking statute, it does not matter what name is given to the manner; it need not even have a one-word name. What matters is whether the scheme is criminal. See *Ray v. State*, 165 Ga. App. 89, 91 (1) (299 SE2d 584) (1983); *Stull v. State*, 230 Ga. 99, 101 (1) (196 SE2d 7) (1973).

2. In a third count, appellant was charged with and convicted of conspiracy to defraud the state (OCGA § 16-10-21 (a)), based on transactions involving the sale of unprocessed rolls of film. He argues that his conviction for conspiracy to defraud the state should be set aside since appellant was found guilty of the completed crime, theft by taking. *Ray v. State*, supra, Division 3.

Appellant's argument is without merit, as there is sufficient evidence to support a conviction of this crime, which is distinct from the general conspiracy statute, OCGA § 16-4-8. There was no merger, as the facts show that this was related to the non-delivery of film supplies and equipment, not to the charges for photos.

3. The remaining enumerations have been considered and we find no reversible error. As to the theory that the two thefts constituted only one continuous course of conduct, one modus operandi, that does not prevent the prosecution of two separate and distinct acts. OCGA § 16-1-7; *Alvin v. State*, 253 Ga. 740, 741 (1) (325 SE2d 143) (1985). One series involved Crown Camera, Gordon's employer, as the direct beneficiary of the theft and employee Gordon as indirect beneficiary; in this series he acted in the capacity of an agent. The other involved Photo Services, his own business, and therefore himself as the sole and direct beneficiary; in this series he acted as principal. His relationship with each of these two businesses caused the two schemes to differ factually of necessity. The cases cited by appellant are not on point.

As to witness Simmons' testimony, the objection is made for the first time on appeal, and we will not consider it. *Chatman v. State*, 162 Ga. App. 582, 583 (2) (291 SE2d 745) (1982); *Robinson v. State*, 175 Ga. App. 845 (2) (334 SE2d 886) (1985).

As to the statements of co-defendant Ikenberg, even if we were to assume that their admission was error, it was harmless, given other evidence as well as appellant's theory of the case. *Robinson v. State*, 229 Ga. 14, 15-16 (189 SE2d 53) (1972); *Crawford v. State*, 178 Ga. App. 739 (1) (344 SE2d 533) (1986).

Insofar as restitution is concerned, the appellant did not contest below the court's basis for arriving at the amount ordered, and the court's recorded justification therefor satisfied OCGA § 17-14-10 and *Garrett v. State*, 175 Ga. App. 400 (333 SE2d 432) (1985).

*Judgment affirmed. Banke, C. J., Deen, P. J., McMurray, P. J., and Pope, J., concur. Birdsong, P. J., and Carley, J., concur in the judgment only. Sognier and Benham, JJ., dissent.*

BENHAM, Judge, dissenting.

As the majority states, appellant's first enumeration is that the evidence presented against him at trial was not sufficient to support his conviction of two counts of theft by taking. After an exhaustive review of the record and trial transcript, I find myself in agreement with appellant and, therefore, in disagreement with the majority.

In order to fully discuss appellant's enumeration concerning the sufficiency of the evidence, a recitation of the facts is necessary. Appellant was the sole proprietor of Photo Service Company and an independent salesman for Crown Camera, Inc. Both companies provided photo processing, printing, and reprinting services to the Georgia General Assembly. In actuality, Photo Service and Crown Camera served as "middlemen" between the legislative photographers and Toco Color Labs, where the film processing and reprinting were done. Appellant or one of his co-indictees would pick up film used by the legislature's photographers and deliver it to Toco Color Labs. The processed film and prints were then delivered to appellant, who returned them to the photographers. Film to be used by the General Assembly photographers was also ordered through and delivered by appellant or his co-indictee. The General Assembly was Photo Service's sole customer and provided appellant with 79 percent of the total business he procured on behalf of Crown Camera.

Appellant and his co-indictees were charged with theft by taking. The State contended the defendants had submitted false invoices to and received payment thereon from the Legislative Fiscal Office for color film processing, printing, and reprinting. In one count of the indictment, appellant and his co-indictees were charged with submitting to the Legislative Fiscal Office and receiving payment on false invoices from Crown Camera for $156,752 when they were allegedly lawfully entitled to no more than $35,356. In a separate count, it was alleged that false invoices from Photo Service in the amount of $240,462 were submitted to and paid by the Legislative Fiscal Office when appellant and his co-indictees were allegedly entitled to no more than $51,876.

The State's case was made difficult to prove due to the fact that none of the invoices submitted to the Legislative Fiscal Office by Crown Camera and Photo Service was itemized. Each invoice stated "Color processing and printing" and "Color reprints" and a dollar amount for each category. Each invoice was accompanied by a non-itemized receipt signed by Billy Murphy, the photographer for the State House of Representatives, acknowledging he had received the

processed film, prints, and reprints. Murphy testified he never counted the number of photographs he received from appellant and acknowledged he often signed the receipts without knowing if any pictures had been delivered. Without itemized invoices, receipts, or State records showing what actually had been received, the State had to take a more circuitous route in its attempt to prove appellant and his co-indictees had illegally taken money from the State for processing, printing, and reprinting film.

The State went about proving its case as follows. Introduced into evidence was a letter dated January 2, 1983, from appellant to Billy Murphy. The body of the letter contained a price list for processing and printing color film as well as for the various types of film, chemicals, and other supplies used by the Capitol photographers. The letter stated that the prices were "to be maintained during calendar year 1983." After ascertaining that all the exposed film appellant received from the legislative photographers was processed at Toco Color Labs, the State compared Toco Color Labs' 1983 price list with appellant's letter/price list, and showed that appellant's listed prices were approximately ten percent higher than Toco Labs' prices. From this information the State extrapolated that the amount appellant was to charge the State for processing, printing, and reprinting was to be ten percent higher than the prices Toco Color Labs charged him. The State then presented evidence of the 1983 bills Toco Color Labs sent Crown Camera and Photo Service for processing, printing, and reprinting the legislative film. After adding ten percent to those bills, the State determined the price appellant "should have" charged the Legislative Fiscal Office and compared that price with the Crown Camera and Photo Service bills actually sent to and paid by the Legislative Fiscal Office. In 1983, Toco Color Labs charged Crown Camera $30,744 for photo processing, printing, and reprinting; invoices submitted by Crown Camera to the Legislative Fiscal Office for photo processing, printing, and reprinting totaled $156,752, a markup of 409 percent. During the same period of time, Toco Color Labs charged Photo Service $45,110; invoices submitted by Photo Service to the Legislative Fiscal Office totaled $240,462, a markup of 433 percent. The State contended that the difference between what Photo Service and Crown Camera should have charged and what they did charge was unlawfully taken from the State.

One commits theft by taking when one "unlawfully takes or, being in lawful possession thereof, unlawfully appropriates any property of another with the intention of depriving him of the property, regardless of the manner in which the property is taken or appropriated." OCGA § 16-8-2. There must be an unlawful taking or unlawful appropriation of the property of another to convict one of theft by taking. *Clark v. State*, 138 Ga. App. 266 (4) (226 SE2d 89) (1976).

"An unlawful taking or appropriation of the property of another is a taking or appropriation thereof without authority of or contrary to law . . . Under [OCGA § 16-8-2], the gravamen of the offense is the taking of the property of another *against the will of such other.*" *Stull v. State,* 230 Ga. 99 (1) (196 SE2d 7) (1973). (Emphasis supplied.) There is no question in the case at bar that appellant received money from the State. What must be focused on is whether that money was unlawfully taken, i.e., against the will of the State or without authority or contrary to law. The evidence presented· at trial shows that the Legislative Fiscal Office willingly paid the bills sent to it by appellant as long as a receipt bearing an authorized signature accompanied the request for payment.

The majority opines that appellant took State funds unlawfully by taking advantage of the State's lax payment system and of the trust of naive state employees. The fact that appellant may have taken advantage of the State does not negate the fact that the Legislative Fiscal Office willingly paid the funds to appellant. Since the gravamen of the offense of theft by taking is the taking of property against the will of the victim (*Stull,* supra), and it was undisputed that the Legislative Fiscal Office willingly made the payments to appellant, the State had to prove that appellant "obtain[ed] property by any deceitful means or artful practice" (OCGA § 16-8-3), i.e., that appellant committed theft by deception.

"[T]he language embodied in [OCGA § 16-8-2], 'Regardless of the manner in which said property is taken or appropriated,' renders the section sufficiently broad to encompass thefts or larcenies perpetrated by deception as prohibited under [OCGA § 16-8-3]. . . ." *Stull v. State,* supra at 101. "A person commits the offense of theft by deception when he obtains property by any deceitful means or artful practice with the intention of depriving the owner of the property. A person deceives if he intentionally: (1) Creates or confirms another's impression of an existing fact or past event which is false and which the accused knows or believes to be false; [or] (2) Fails to correct a false impression of an existing fact or past event which he has previously created or confirmed . . . [or] (5) Promises performance of services which he does not intend to perform or knows will not be performed. Evidence of failure to perform standing alone shall not be sufficient to authorize a conviction under this subsection." OCGA § 16-8-3.

In the case at bar, the State had the option of attempting to prove that appellant had created a false impression as to the amount he was going to charge the State for the photo processing, printing, and reprinting (OCGA § 16-8-3 (b) (1)); had failed to correct that previously created false impression (OCGA § 16-8-3 (b) (2)); or had promised performance of services he did not intend to perform

(OCGA § 16-8-3 (b) (5)). With any option, the State's case had to focus on the January 2 letter/price list sent to Billy Murphy by appellant. However, the language of OCGA § 16-8-3 (b) (1) "solely contemplates a deceitful representation as to 'an existing fact or past event,' . . . a false promise of future performance cannot be grounds for a subsection [1] theft by deception prosecution." *Croy v. State*, 133 Ga. App. 244 (1) (211 SE2d 183) (1974). See also *Mathis v. State*, 161 Ga. App. 251 (288 SE2d 317) (1982); *Elliott v. State*, 149 Ga. App. 579, 581 (254 SE2d 900) (1979). Compare *Ray v. State*, 165 Ga. App. 89 (2) (299 SE2d 584) (1983); *Harris v. State*, 141 Ga. App. 213 (233 SE2d 21) (1977). Appellant's letter to Murphy, assuming it is a deceitful representation, is not a deceitful representation as to an *existing fact* or *past event*. If it is a false promise, it is one to be performed in the future, and that cannot be the grounds for conviction of a subsection (1) theft by deception. *Croy*, supra. In order to prove a subsection (2) theft by deception, "the prosecution had to prove everything it had to prove in subsection [1] plus the additional element of defendant's 'failure to correct' the false impression he created." *Sassoon v. State*, 138 Ga. App. 172, 176 (225 SE2d 732) (1976). Since the State could not prove a deceitful representation as to an existing fact or past event for subsection (1), it was unable to carry its burden with regard to subsection (2).

Finally, in order to obtain a conviction of theft by taking by proving theft by deception under subsection (5), the State must prove a definite contract. *Banton v. State*, 57 Ga. App. 173, 174 (194 SE 827) (1938). The State, for good reason, has not contended that the letter/price list constituted a binding contract to perform the services at the listed prices. Therefore, a conviction under subsection (5) was not proven.

In short, on January 2, 1983, appellant gave Billy Murphy a nonbinding price list. If he chose to deviate from the listed prices and the State willingly paid him what he asked, he committed no crime. The failure of the General Assembly photographers to maintain any type of business records, coupled with the failure of the State to enter into a binding contract with appellant for his services, reduces appellant's conduct to nothing more than that of a sharp and cunning businessman doing business with and taking advantage of an unquestioning client. Because there was no evidence to support appellant's convictions for theft by taking, we must reverse them.

The majority states there was evidence that appellant "did not charge [the State] what he said he would charge." The majority's position raises the January 2 letter/price list to the status of a binding contractual agreement (see *Banton v. State*, supra), which it is not; or makes the letter/price list a deceitful representation under OCGA § 16-8-3 (b) (1). However, as stated earlier, to sustain a conviction of

theft by deception, a deceitful representation must be made as to an existing fact or past event — *a false promise of future performance* cannot be grounds of a theft by deception prosecution. *Croy v. State,* supra. Appellant's letter/price list was a false promise of future performance. He was in no way bound to maintain the prices listed.

I conclude by analogizing the facts of this case to a situation more likely to occur. If a vendor pays $1 for an item and then charges a customer $5 for the item, we do not say the vendor has committed a theft by taking. Even if the vendor told the customer, "Tomorrow, I will sell you this item for $5," and then charges the consumer $10, which the consumer willingly pays, we do no say the vendor is a thief. Instead, we admonish the customer for not questioning the vendor about his increased price and for being taken advantage of. The same situation occurred here, though on a much larger scale. A lax system and naive employees were taken advantage of and appellant profited. While he may have benefited from the system, he did not commit theft by taking.

Because I do not believe the evidence was sufficient for a rational trier of fact to have found appellant guilty beyond a reasonable doubt of theft by taking, I must dissent to the affirmance of appellant's convictions of theft by taking.

I am authorized to state that Judge Sognier joins in this dissent.

DECIDED DECEMBER 4, 1986 —
REHEARING DENIED DECEMBER 19, 1986 —

*Robert J. Reed, Albert M. Pearson III,* for appellant.
*Robert E. Wilson, District Attorney, Michael J. Bowers, Attorney General, Harrison W. Kohler, Senior Assistant Attorney General, George P. Shingler, Assistant Attorney General,* for appellee.