## A04A0098. BRADY v. THE STATE.
### (599 SE2d 313)

MILLER, Judge.

A jury found Dennis Brady guilty on four counts of theft by deception. After the State presented Brady's six prior felonies, including two convictions for deposit account fraud, two convictions for issuing bad checks, and two convictions for forgery, the trial court sentenced him as a recidivist. Following the denial of his motion for new trial, Brady filed this appeal to contest the sufficiency of the evidence and the admission of similar transaction evidence. We affirm in part and reverse in part.

1. Brady contends that the evidence adduced at trial was insufficient to allow a rational trier of fact to find proof of his guilt beyond a reasonable doubt. He claims that the jury's verdict was unfounded as to each count of theft by deception.

OCGA § 16-8-3 defines several methods by which a person may intentionally deceive another. See *Adams v. State*, 249 Ga. App. 730, 731 (549 SE2d 539) (2001). Under subsection (a), "[a] person commits the offense of theft by deception when he obtains property by any deceitful means or artful practice with the intention of depriving the owner of the property." Under paragraph (b) (1), "[a] person deceives if he intentionally: [c]reates or confirms another's impression of an existing fact or past event which is false and which the accused knows

or believes to be false"; or, under paragraph (b) (5), "[p]romises performance of services which he does not intend to perform or knows will not be performed. Evidence of failure to perform standing alone shall not be sufficient to authorize a conviction under this subsection." OCGA § 16-8-3 (b) (1), (5).

The gravamen of theft by deception "lies in obtaining the property of another by intentionally creating a false impression as to an existing fact or past event. Creating a false impression as to a future event[,] . . . by a promise of future payment, is not sufficient." *Mathis v. State*, 161 Ga. App. 251 (288 SE2d 317) (1982) (conviction reversed where defendant persuaded grocer to allow her to take groceries worth $47.86 based on her promise to pay for them the following Friday, a promise she failed to keep). "The element of a false representation must bear on an existing fact or past event and not future performance." *Ellerbee v. State*, 256 Ga. App. 848, 853 (1) (569 SE2d 902) (2002).

> The reason for the rule regarding existing or past events is that if the party to whom the representation was made chose to rely upon the promise as to a future contingency, he is not deceived by deceitful means or artful practice, but his loss results from his absolute confidence in the party making the promise.

(Citation and punctuation omitted.) *Robinson v. State*, 198 Ga. App. 431, 433 (401 SE2d 621) (1991). With these legal principles in mind, we consider each count separately.

(a) *Count 1.* The indictment accused Brady of theft by deception, stating that Brady:

> on or about 6 May 1999, did then and there, unlawfully obtain the property of another, to wit: 1997 CHEVROLET SILVERADO TRUCK, the property of PRINCE AUTOMO-TIVE GROUP, INC., by deceitful means and artful practice, to wit: by attempting to pay for the vehicle with a post-dated check after creating the impression that he would be transferring an amount of money into the account sufficient to cover the cost of the vehicle this impression being false and known to be false by said DENNIS EUGENE BRADY. . . .

Brady contends that the State failed to prove an essential element of theft by deception because the record contains no evidence of a false representation made at the time that he offered the post-dated check to Prince. He argues that Prince "knowingly accepted" his post-dated check and claims that "the record is completely

devoid of any evidence that Appellant did not have money that was going to be transferred."

When viewed in the light most favorable to the verdict, the evidence shows that in early May 1999, Brady approached J. H. White, a sales representative at Prince Chevrolet, to express his interest in buying a 1997 Chevrolet Silverado truck. White recalled Brady telling him that if White could "hold the truck for a couple of days, [Brady] would get the money." Although the paperwork was incomplete, White permitted Brady to leave in the truck. White testified that after Brady drove the truck for a couple of days, Brady told him that he was having the money wired. Brady called White the next day, "when the money wasn't there" and told White "it would be here tomorrow." After Brady called yet again saying there had been another delay in transferring the funds, White told him "we need to do the paperwork on this thing." Brady complied with White's request.

On May 12, Brady met with Donald Gilder, the business manager at Prince's used car department. Gilder testified that he understood that Brady "was waiting on some money to be transferred in from an account and he was opening an account here in town." According to Gilder, after Brady completed the paperwork on May 12, Brady "stayed in contact pretty much every day." Two weeks later, on May 26, Brady presented Gilder with a check in the amount of $21,419.93. Company policy required Gilder to obtain clearance before accepting Brady's check because it was a "start-up check." Gilder was unable to verify the check with the bank because it was late in the day, but accepted the check from Brady anyway. Gilder admitted that when Brady gave him the check on May 26, Brady had already had the truck for "[p]robably two weeks." It is undisputed that when Brady gave his personal check to Gilder on May 26, his checking account did not have sufficient funds to cover that check.[1]

Melinda Moore, a vice president with South Georgia Banking Company, testified about Brady's checking account statements. Moore testified that Brady's first statement dated 6/01/99 showed "an opening deposit of cash of $100" made on May 26, 1999. Brady's second statement dated 6/22/99 showed that the bank closed Brady's checking account on June 17 due to the accumulation of fees assessed for insufficient funds on June 1, June 4, and June 17. She also testified that Brady's statements indicate that Brady's checking account was not yet open as of May 25.

---

[1] Brady's bank statements indicate that on May 26, he deposited $100 to that account. The $100 deposit is the only amount that Brady ever deposited to that account before the bank closed it in June 1999.

In sum, the evidence establishes that Brady obtained the truck, drove it for a number of days, returned to complete certain paperwork, then returned still later to submit a personal check to pay for the truck from an account that lacked sufficient funds to cover that check. In fact, the State admits in its brief that "payment was not tendered" on May 12, stating that the "appellant brought payment on May 26, through a countercheck, one from a 'start-up' account, in the amount of $21,419.93." When Prince allowed Brady to leave in its truck, its employees knew that Brady did not have sufficient funds to pay for it. Brady created a false impression that money would be wired into his account at some time in the future. But, any promises, reassurances, or representations that Brady made that he would have the funds in the future to pay for the truck could not as a matter of law constitute theft by deception. See *Ellerbee*, 256 Ga. App. at 853 (1). Because the false impression created must be as to an existing fact, not as to a future event, this conviction cannot stand.

(b) *Count 2.* Under this count, Brady was indicted for

> the offense of THEFT BY DECEPTION, for ... on the 8th day of June 1999, [Brady] did then and there, unlawfully obtain the property of another, to wit: 1984 RED CJ-7 JEEP, the property of Bill Fletcher, by deceitful means and artful practice, to wit: by purportedly attempting to purchase the above-listed vehicle with a post-dated check after creating the impression that he would be transferring an amount of money into the account sufficient to cover the cost of the vehicle this impression being false and known to be false by said [defendant].

Fletcher testified that when Brady expressed interest in his 1984 Jeep, he and Brady then negotiated a price. On June 8, 1999, Fletcher filled out a bill of sale and transferred the Jeep to Brady that same day. Fletcher testified that in payment for the Jeep, Brady gave him a personal check in the amount of $5,500 dated June 11, 1999. When Fletcher was asked why he accepted a check that was dated June 11 when the transfer occurred on June 8, Fletcher explained, "Well, [Brady] asked me if he could make the check out for June 11th because he had some money coming in to —" Fletcher could not recall where the money was supposed to be coming from. Fletcher admitted agreeing to allow Brady to post-date the check and to accept the post-dated check in payment for the Jeep. On or about June 15, Fletcher received notice from his bank that Brady's check had been returned because Brady's account was "in the process of closing."

Again, we find ourselves constrained to reverse this conviction because Brady's misrepresentation involved future conduct, i.e., that

he would be transferring an amount of money into an account sufficient to cover the check. See *Croy v. State*, 133 Ga. App. 244, 247 (211 SE2d 183) (1974). In *Croy*, we held: "If . . . the check is postdated, or if the giver of the check states that he has not enough money in the bank to cover it though he expects to have by the time the check is presented for payment, there can be no implied representation that there is now enough on deposit to cover the check." (Citation omitted.)

(c) *Count 3.* The State accused Brady of theft by deception by unlawfully obtaining $1,000, property belonging to James E. Radford "by deceitful means and artful practice, to wit: by creating the impression that the money was to be used to buy a used vehicle, the ownership of which was to be shared. . . ."

Radford testified that Brady told him that he had a friend in jail who needed money for bail and who owned a Jeep. Brady persuaded Radford to enter a joint venture to buy the inmate's Jeep, then if the man "didn't come back up with the money . . . we were just going to . . . get our money back out of it and make a profit off of it." On June 8, Brady appeared at Radford's place of business, driving a Jeep, later determined to belong to Fletcher. Radford wrote Brady a check for $1,000 with the understanding that Brady would get the title to the Jeep in exchange for the money. Radford discovered later that Brady went to the bank and cashed the check the same day he paid Brady for the Jeep. Radford also testified that, after that day, he never again saw Brady, the Jeep, or his money. After cashing Radford's check, Brady left town and traded the Jeep at a used car dealership in Ringgold, Georgia. This evidence was sufficient to establish that Brady used deceitful means and artful practice in order to induce Radford to part with his money. See *Ray v. State*, 165 Ga. App. 89, 92-93 (2) (299 SE2d 584) (1983).

(d) *Count 4.* Brady was charged with theft by deception occurring on April 27, 1999, by unlawfully obtaining $1,125, property belonging to Kenny Brownlee. Count 4 alleged that Brady deceived Brownlee by falsely leading him to believe that Brady would do certain roofing work when Brady had no intention of doing the work.

Brownlee's house had a roof damaged by hail. Brady approached Brownlee, offering to repair the roof and telling Brownlee that he could get shingles at a discount price from a lumber company going out of business. On April 27, 1999, Brady and Brownlee entered into a written contract drafted by Brady, and Brownlee made out a check to Brady dated April 27, 1999, in the amount of $1,125 to purchase the shingles. Brady cashed the check that same day. Two days later, Brady told Brownlee that he had the shingles and that they were on a trailer that had a flat tire, parked outside his house. As the days passed, Brady offered various excuses why he could not do the work or deliver the shingles to Brownlee. Brownlee testified that he paid

Brady $1,125 to buy roofing shingles and that Brady never gave him any shingles or refunded his money. This evidence sufficed to support Brady's conviction for theft by deception. See *Ray*, 165 Ga. App. at 92-93 (2).

2. Brady contends that the trial court erred in admitting evidence of a prior incident (in which Brady failed to fulfill a promise to paint the victim's house) as a similar transaction. Brady argues that his dealings with that homeowner were not similar to the allegations in this case, raising an improper inference as to his character.

The trial court found the earlier incident sufficiently similar, and we agree. Evidence of similar transactions may be admitted if there is sufficient evidence that the accused committed the other offense or act and there is a sufficient similarity between the other act and the crime charged, so that proof of the other incident tends to prove and support the evidence of the offense charged. *Greene v. State*, 274 Ga. 220 (2) (552 SE2d 834) (2001).

The victim of the prior incident testified that in June 1998 she and Brady signed a contract for Brady to paint her house. She already had purchased the exterior paint from a Home Depot store. Upon learning that the homeowner was not satisfied with the color of the paint, Brady offered to exchange the paint for her. She entrusted Brady with the receipt, and he left with the paint. She testified that she never got back her money or the paint. After Brady offered her repeated excuses including, "[the paint is] not matched yet," she contacted Home Depot and learned that Brady had obtained a cash refund for her paint. An investigator testified that during a custodial interview, after completing a waiver of rights form, Brady admitted returning the paint to Home Depot and that he owed the victim at least $480.

In the earlier incident and the one involving Brownlee, the parties entered into a written contract with Brady. Brady then obtained the victims' money or property, kept the money or property, did not return to furnish the services required by the written contracts, and never refunded the money or returned the property. No error has been shown in the admission of this evidence. See *Greene*, 274 Ga. at 221 (2).

On remand, we direct the trial court to resentence Brady.

*Judgment affirmed as to Counts 3 and 4 and reversed as to Counts 1 and 2. Andrews, P. J., and Ellington, J., concur.*

DECIDED MAY 11, 2004.

*Lon P. Kemeness*, for appellant.

C. Paul Bowden, District Attorney, Bradford L. Rigby, Assistant District Attorney, for appellee.