70128. GARRETT v. THE STATE.
(333 SE2d 432)

BEASLEY, Judge.

Appellant pled guilty to a burglary charge and was sentenced to five years' imprisonment and five years' probation, with restitution as

a condition of probation. Enumerated as error are the trial court's making oral rather than written findings, and the determination of the amount of restitution on the basis of the retail rather than the wholesale value of the jewelry stolen.

1. While an order of restitution in a criminal case "shall not bar any civil action against the offender," OCGA § 17-14-11, the restitution mechanism is an attempt to avoid the necessity of a separate civil action and to determine the amount of loss caused by the criminal act in the usually earlier criminal proceedings rather than in a second and more protracted civil suit. This device, by which Georgia's declared public policy of requiring criminals to make "restitution to their victims," OCGA § 17-14-1, has the salubrious effect of serving judicial economy and saving as well the time and costs and repeated court appearances which would burden all parties and witnesses were the matter relegated to civil as well as criminal proceedings in all cases. Thus, when restitution *is* ordered, it "shall be enforceable as is a civil judgment by execution." OCGA § 17-14-13 (a). A defendant can even offer a restitution plan, and thus the element of settlement is introduced. OCGA § 17-14-7. It appears then, that the objective is to resolve and conclude the whole matter in a single court proceeding, in the context of the criminal action, in a manner acceptable to the parties and taking into account their relative positions. Consequently the maximum amount of damages must be those recoverable in a civil action, as the Code provides; otherwise the order of restitution would not finally and totally resolve the question of how much the offender owes the victim.

In order to achieve the goal of finality of the whole affair in the criminal proceeding, the civil aspect should satisfy the parties so as to obviate a civil suit. If the judge were deciding damages in civil litigation, of course, he would have to make written findings of fact and conclusions of law. OCGA § 9-11-52 (a). This would then give the parties knowledge of the basis for the court's judgment and would allow the appellate court to consider whether or not the court's judgment was sound as a matter of law. The same applies to the determination of restitution, which will hopefully be a substitute for civil suit.

The legislature commanded that the court take into account, "[i]n determining the nature and amount of restitution," not only what the civil damages would be but beyond that, also certain other specified factors. OCGA § 17-14-10. There is no way to assure that has been done, unless there is a record of it. How else can the parties, or this court, divine that the ordering authority, be it court, State Board of Pardons and Paroles, or Department of Offender Rehabilitation, has complied with the law? As is the case with guilty pleas, see *State v. Germany*, 246 Ga. 455 (271 SE2d 851) (1980); *Fuller v. State*, 159 Ga. App. 512 (284 SE2d 29) (1981); *Conlogue v. State*, 243 Ga.

141 (2) (253 SE2d 168) (1979); *Sanders v. State,* 169 Ga. App. 125 (312 SE2d 160) (1983), a matter of this magnitude[1] cannot be presumed.

Although OCGA § 17-14-10 does not expressly require the court or other ordering authority to make a record regarding consideration of the factors, the Supreme Court of Georgia has indicated such a construction: "We find that Code Ann. §§ 27-3008 through 27-3010 contemplates a hearing and specific written findings by the court in determining whether it will order restitution and, if so, the amount thereof." *Cannon v. State,* 246 Ga. 754, 756 (272 SE2d 709) (1980). The issue in that case was whether a hearing was afforded so as to comport with constitutional due process of law as to damages, and the court found that it was. Yet the court took pains to point out that "specific written findings" are embraced in the statute's requirements, although the court did not conclude that they were constitutionally necessary.

In Garrett's case, the lack of findings is precisely the issue. A hearing was held, to be sure. But the transcript and record of it does not show what the court found as fact nor that it considered the statutory factors. Actually, some of the legislatively-mandated factors were not orally discussed at all.

This court followed the Supreme Court's *Cannon* directive in *Patterson v. State,* 161 Ga. App. 85, 86 (289 SE2d 270) (1982) to a degree. Appellant complained that he was denied a hearing on the restitution issue. The opinion quoted from *Cannon* precisely what we have quoted above and repeated that the restitution act "contemplates a post-trial hearing on the issue of restitution wherein the trial court 'shall consider' factors which presumably have no relevancy to and were not addressed in the guilt-innocence phase of the trial itself. Code Ann. § 27-3010 [now OCGA § 17-14-10]." The court reversed that portion of Patterson's sentence which imposed restitution, for lack of a hearing, and "remand[ed] the case to the trial court with direction that a hearing on the issue of restitution be held at which Code Ann. § 27-3009 and the factors in Code Ann. § 27-3010 are to be considered and we further direct that the written finding required by Code § 27-3008 be made." Id. at 86. The latter referred to the ultimate finding on the subject of restitution.

Now, the issue is squarely before us. Are findings to be made with respect to the factors set out in OCGA § 17-14-10? If so, we do not believe that OCGA § 17-14-8 (b), which provides that "[t]he failure to make a finding as required *by this Code section,* however, shall not invalidate any order or other action of the ordering authority,"

---

[1] The restitution in this case exceeded $25,000.

saves the day when such is not done. (Emphasis supplied.) That simply refers to subsection (a) of that Code section, which requires the ordering authority, before granting any relief, to make one of four alternative written findings, the ultimate finding on restitution. As applies to this case, the finding would obviously be number 4: "That restitution will be ordered as a condition of the relief [i.e., probation instead of continued incarceration]." OCGA § 17-14-8 (a) (4). Subsection (b) simply says that if *this* written finding is not made, the order will not be invalidated. Clearly, that provision is not relevant to the inquiry here. Moreover, that finding, although not antedating it, is contained in the order of probation.

The preface to the Act amending Code Ann. Title 27 (now OCGA § 44-14-1 et seq.) indicates that one of the express purposes of the amended Act is "to provide for required findings . . ." 1980 Ga. Laws I, p. 1382. Bearing in mind the teaching of *Cannon,* supra (albeit in *dicta*), and considering the legislative purposes of the restitution statutes (OCGA § 44-14-1 et seq.), we are persuaded that this case must be remanded to the trial court for preparation of written findings of fact related to the factors in OCGA § 17-14-10. Common sense dictates that the only way it can be assured that the Code requirements are complied with, and to test compliance, is for a record to be made.

As the record does not show totally what information the court had before it, it may be that the information was sufficient to allow a consideration of the required factors. If not, another hearing will be necessary. The trial court is the best judge of that. Compare *Jarrett v. State,* 161 Ga. App. 285, 287 (4) (287 SE2d 746) (1982).

2. One of the two primary goals of restitution is, as nearly as possible, to make the victim whole. OCGA §§ 17-14-1, 17-14-9, 17-14-10 (4). In the instant case the victim adduced evidence of the value of her loss in the form of a list showing the items taken, together with the wholesale and retail value of each, for a total of $25,483.90 at retail and approximately half that amount at wholesale. Defense counsel urged that the lower, or wholesale, value be adopted as the measure of damages. However, the court, after considering the list of stolen items and the victim's testimony that she would have certain expenses attributable to borrowing money for purchase of substitute items, to having the display cases repaired, and to actually restocking the store, determined that restitution should be measured at retail value less any recovery.

Although we are unable to find any recent Georgia case law dealing with the measure of damages for goods taken in a burglary, there is a line of theft by taking cases which consistently holds that retail value is the proper measure of damages when merchandise has been unlawfully taken from a retail establishment. See, e.g., *Bryan v. State,* 148 Ga. App. 428 (251 SE2d 338) (1978); *Young v. State,* 144

Ga. App. 712 (242 SE2d 351) (1978); *Brown v. State*, 143 Ga. App. 678 (239 SE2d 556) (1977). However, retail value is not necessarily the appropriate measure of damages for restitution. The cases cited hold that retail value is the proper standard by which punishment is to be determined in theft by taking cases. To determine the proper standard in restitution, one must turn to the statutory scheme for restitution, OCGA § 17-14-1 et seq.

OCGA § 17-14-2 (2) defines "damages" in the context of restitution as "all damages which a victim could recover against an offender in a civil action . . . based on the same act or acts for which the offender is sentenced. . . ." The definition excludes punitive damages and damages for pain and suffering, mental anguish, and loss of consortium. OCGA § 17-14-9 states that restitution may not exceed the victim's damages.

Thus, the statutory scheme requires the court to determine what type of civil action could be maintained by the victim, and to determine what the proper measure of damages would be in such a civil action. In the present case the offense is burglary. The civil action which could be maintained would be one for conversion. The items stolen were jewelry. Presumably, no jewelry was recovered. Thus, the measure of damages for the total loss of such tangible personal property is the full market value of the property at the time of the loss. See Eldridge, Ga. Pers. Inj. & Prop. Dam. — Damages, § 9-1 (1978). " 'The market value of goods is the price at which the owner of the goods, or the producer, holds them for sale; the price at which they are freely offered in the market to all the world; such price as dealers in the goods are willing to receive, and purchasers are made to pay, when the goods are bought and sold in the ordinary course of trade. . . .' " *Watson & Powers v. Loughran*, 112 Ga. 837, 841 (38 SE 82) (1901).

The record in the present case shows that the restitution ordered is within this measure of damages. However, to simply say that the appropriate measure of damages is retail value in all cases would be to ignore the statutory scheme established and the myriad measures of damages possible, depending upon the acts of the offender, how the property was disposed, any recovery, the condition of property recovered, and the type of property involved.

*Judgment vacated and case remanded. Deen, P. J., and Pope, J., concur.*

DECIDED JULY 10, 1985.

*K. Van Banke*, for appellant.

*Frank C. Winn, District Attorney*, for appellee.