A91A0490. HARRIS v. THE STATE.
(410 SE2d 123)

POPE, Judge.
Defendant Kenneth Dewayne Harris pled guilty and was found

guilty of theft by taking. The stolen property, a rental car, was taken by defendant from a parking lot where it had been parked by the lessee. The sentence imposed on July 26, 1990, provided for four years to serve 60 days in prison with the remainder on probation, and as one of the conditions of probation, restitution in an amount to be determined at a subsequent hearing. On August 29, 1990, restitution was ordered to be paid the lessee victim in the amount of $600. Although the amount of restitution had been in dispute, the lessee failed to appear at the hearing, apparently due to misinformation received from a receptionist in the District Attorney's office, and the prosecutor and defendant through counsel stipulated to a restitution amount of $600. Apparently lessee was notified subsequently that she was being sued by the lessor for damages done to the stolen automobile. After being notified of the $600 restitution amount, lessee's attorney filed a motion to modify the restitution order to provide for additional restitution in the amount of $2,623.99, which was the balance due on the amount being demanded of lessee by lessor. A second restitution hearing was held, and defendant posed timely objections to the requested increase in the amount of restitution. At this hearing the trial court expressed concern regarding the standing of a victim to intervene in a criminal proceeding in this manner and required the State to argue the lessee's motion for additional restitution. On November 9, 1990, an order was signed, and filed on November 15, 1990, finding that *lessor*, Atlanta Rent-A-Car, Inc., has suffered a loss which is a result of the criminal act of the defendant, and is "entitled to damages in the nature of costs for lost rental of a vehicle and damage to the vehicle; the amount of damages is $2,296.30." The trial court ordered defendant "liable for restitution in the amount of $2,296.30. Said amount . . . to be paid in full *during the probated portion of the sentence. . . .*" (Emphasis supplied.)

Defendant appeals from the trial court's order awarding restitution in the amount of $2,296.30, contending that "the trial court's modification of [his] sentence to increase the restitution was invalid." *Held*:

1. Defendant argues the trial court's order is invalid because, inter alia, the attempted increase in the amount of restitution was ordered both after the term of court in which sentence initially was imposed and more than 60 days from the date sentence was imposed by the judge, in violation of OCGA § 17-10-1 (a). However, Article 1, Chapter 14, Title 17 of OCGA, specifically pertains to "Restitution and Distribution of Profits to Victims of Crimes." Contained within Article 1 is OCGA § 17-14-12, which pertinently provides: "The ordering authority shall retain jurisdiction to modify a restitution order *at any time* before the expiration of the relief ordered." (Emphasis supplied.) The limiting provisions of OCGA § 17-10-1 (a) are to be given

application "except as otherwise provided by law." Clearly, however, the legislature intended OCGA § 17-14-12 to be excepted from the time limitation in OCGA § 17-10-1. Compare *England v. Newton*, 238 Ga. 534, 535 (233 SE2d 787) (1977) and *Logan v. Lee*, 247 Ga. 608 (278 SE2d 1) (1981).

2. Defendant also argues the order is invalid because it increases his punishment after he had commenced serving his sentence. The State does not dispute that defendant had begun serving his sentence at the time the trial court entered its order increasing the amount of restitution to be paid the victims. It also is true, as defendant argues, that "once a person has entered upon the execution of his sentence, the court is without power to change it by increasing the *punishment*." *Inman v. State*, 124 Ga. App. 190, 192 (183 SE2d 413) (1971). The question then arises as to whether an increase in the amount of restitution, awarded as a condition of probation, is an increase in *punishment* as argued by defendant, or is but an increase in a non-punitive aspect of the probation portion of the sentence as argued by the State.

Contrary to defendant's argument on appeal, restitution is not punitive in nature. Rather, the first and foremost purpose of restitution is to compensate or reimburse the victim for his loss, or insofar as it is possible, to return him to the position he enjoyed before the crime was committed against him. Indeed, Webster's Third New Intl. Dictionary (3d ed. 1981) defines restitution as "an act of restoring or a condition of being restored: and also as "restoration of something to its rightful owner: the making good of or giving an equivalent for some injury. . . ." Consequently, restitution can be ordered paid to the victim to reimburse him for the loss of some physical thing, such as a stolen automobile; it can also be used in an attempt to help the victim recover from the crime as, for example, when a court orders a child or sexual abuser to pay for the victim's psychological treatment in order to help the victim overcome the effects of the crime. See S. Res. 94, Ga. L. 1986, p. 1203; see also *Ledford v. State*, 189 Ga. App. 148 (375 SE2d 280) (1988).

Moreover, while restitution is not synonymous with civil damages, there are many similarities between restitution ordered to be paid by one convicted of a crime and damages awarded against a party in a civil trial. The restitution chapter provides that "[d]amages means all damages which a victim could recover against an offender in a civil action, . . . based on the same act or acts for which the offender is sentenced, except punitive damages and damages for pain and suffering, mental anguish, or loss of consortium." OCGA § 17-14-2 (2). " 'Victim' means any natural person or his personal representative or any firm, partnership, association, public or private corporation, or governmental entity suffering damages caused by an of-

fender's unlawful act." OCGA § 17-14-2 (9). OCGA § 17-14-9 provides that "[t]he amount of restitution ordered may be equal to or less than, but not more than, the victim's damages." However, because the offender has already been punished for his crime, restitution may not include punitive damages. OCGA § 17-14-2 (2). Moreover, restitution and civil judgment are enforceable in the same manner — by execution. OCGA § 17-14-13. Thus, as is readily discerned from the statutory provision governing restitution, such an award is not punishment any more than are civil damages awarded to make whole a party who has incurred losses because of another party's breach of a statutory, contractual or common law duty. As stated above, restitution is an economic recovery, a transfer of value from one who has caused injury or damages to one who suffered the same as a result. Restitution aims to restore the victim or victims to the condition existing before defendant's criminal act, via a monetary expression of restoration. "One of the two primary goals of restitution is, as nearly as possible, to make the victim whole. OCGA §§ 17-14-1, 17-14-9, 17-14-10 (4)." *Garrett v. State*, 175 Ga. App. 400, 403 (2) (333 SE2d 432) (1985).

Based on the foregoing, we find the trial court had authority to modify the restitution order to include the lessor's damages. The Code sections relating to restitution contemplate a hearing and findings on the amount of restitution due the victim, if any. *Cannon v. State*, 246 Ga. 754 (3) (272 SE2d 709) (1980). When error in determining the amount of damages was discovered, the proper procedure for correcting the error was to reopen the issue for further evidence and a new finding on the amount of damages, including the lessor's damages. Clearly, restitution could be ordered for both the lessor and the lessee of the automobile, as both were victims of the defendant's acts in connection with his theft of the automobile. Since it does not appear from the evidence that the restitution ordered exceeded the damages suffered by the victims, the defendant has not shown that the trial court exceeded its authority. Instead, it implemented the stated policy of this State, which is "that restitution to their victims by those found guilty of crimes is a primary concern of the criminal justice system." Because the increase in the amount of restitution initially ordered in this case did not constitute an impermissible increase or enhancement of defendant's punishment, the trial court's order must be affirmed.

*Judgment affirmed. Banke, P. J., Carley, Beasley, Cooper and Andrews, JJ., concur. Sognier, C. J., McMurray, P. J., and Birdsong, P. J., concur in part and dissent in part.*

BIRDSONG, Presiding Judge, concurring in part and dissenting in part.

The problems some opinions create frequently lead a more robust judicial existence than the good therein contained. I believe such is the effect of Division 2 of the majority opinion.

In addition to subjecting appellant to an increase in punishment for reasons hereinafter addressed in detail, the opinion of the majority raises inter alia the following legitimate concerns: (a) The precedent of the majority subjects this and other hapless defendants to genuine threat of repeated increases in the amount of adjudged restitution, years after he or she has been sentenced. In fact, under the precedent established by the majority, such increases can be ordered long after the expiration of any statute of limitation that would have pertained if the victim had elected to utilize the normal judicial avenue of initiation of civil litigation to recover "damages." As the majority apparently would allow restitution to be increased as long as a probation period is in existence, such an increase could occur a decade or more after punishment was initially adjudged, and long after any evidence favorable to the defendant and relevant to the restitution issue has been lost. *I cannot be a part of such a fundamentally unfair procedure*, regardless of how appealing it may appear on initial consideration; and, (b) I perceive that henceforth victims, who belatedly learn of this procedural vehicle of open-ended restitution will be applying in substantial numbers to the trial courts to reopen restitution hearings in cases long ago adjudicated to award them reimbursement for their "damages." Victims' rights groups will view this procedure, and rightfully so, as now being available to reimburse all late discovered victims — regardless of the impact such procedure will have on an already overly burdened criminal justice system.

Additionally, I am compelled to consider that: (a) If restitution is not an inherent part of "punishment," then what is it? The majority, protestations notwithstanding, apparently considers it to be some hybrid form of *civil or quasi-civil reimbursement and economic recovery for "damages" done*, and thus that it can be legally separated from the "punishment" imposed by the trial court in the sentencing process. If restitution is not an inherent part of the punishment adjudged during the sentencing process, what state and federal due process requirements must be met, during the imposition thereof, when a defendant declines to stipulate either that he was responsible for the damages done or as to the amount of "damages" for which reimbursement is claimed? Stated another way, is a defendant now entitled to some form of mini-trial within the criminal proceedings to determine his liability for restitution and the amount thereof? On the other hand, if no such procedure is required, and restitution is not an inherent part of the punishment adjudged during the sentencing process, can we now lay claim to a defendant's property at any time during a probation period without due process (compare Ga. Const. of 1983,

Art. I, Sec. I, Par. I); and, (b) As the majority appears to consider restitution to be similar and equivalent to a civil or quasi-civil procedure in nature, would a criminal defendant henceforth be entitled to demand a jury trial during the sentencing proceeding or subsequent restitution hearing, under our state constitution (Ga. Const. of 1983, Art. I, Sec. I, Par. XI), as to the issue of liability for restitution or as to the amount of restitution due and owing. Moreover, I believe the State, not the defendant, should bear the burden of insuring that a correct amount of restitution timely is adjudged. A defendant should not be penalized for the failure of the State to stipulate to the proper amount of restitution at the initial restitution hearing. This is but a partial list of the contents of the Pandora's box open before us, which fortunately need not be resolved today.

1. Appellant argues the order of November 1990 is invalid because it increases his punishment after he had commenced serving his sentence. The State in its appellate brief states, "there is . . . no dispute that appellant had begun serving his sentence in this case." However, the State argues, inter alia, that "although restitution has been made a part of the criminal process, it is clearly not punitive in nature"; that the "non-punitive nature of restitution is analogous to that of child support" and should be treated similarly; and, that "modification of a sentence which occurs after service [of sentence] begins, but which does not enhance punishment, is permissible under the Fifth Amendment."

(a) First it is noted that OCGA § 19-10-1 (j), formerly OCGA § 42-8-34 (d) relates solely to cases of abandonment, (Acker v. State, 184 Ga. App. 321 (361 SE2d 509)) and is inapplicable to the case at bar. (Note: Subsection (d) of OCGA § 42-8-34 was deleted, effective April 3, 1989 by Ga. L. 1989, p. 381, §§ 2 and 3 and added as OCGA § 19-10-1 (j) to Chapter 10 of Title 19 (Domestic Relations — Abandonment of Spouse or Child)). Further, the basic modification provisions of OCGA §§ 17-10-1 (a); 17-10-3 (b); 17-14-12; 42-8-34 (g); and 42-8-38 (c) on their face are not the "functional equivalent" of the provisions of OCGA § 19-10-1 (j) (4) (formerly OCGA § 42-8-34 (d) (4)). See Tillman v. State, 249 Ga. 792, 793 (294 SE2d 516).

(b) Hudson v. State, 248 Ga. 397 (283 SE2d 271) is distinguishable. Hudson, supra, involved modification of an unrevoked suspended sentence in an abandonment case to allow an increase in child support pursuant to Code Ann. § 27-2709 (d) (4) [currently OCGA § 19-10-1 (j) (4), formerly OCGA § 42-8-34 (d) (4)]. See subsection 1a, above. Further, "[a]lthough the payment of monthly child support was made a condition for the suspension of the sentence," it was determined not to be part of the sentence, but was, in addition to a moral obligation, a statutory duty under Code Ann. § 74-105 (OCGA § 19-7-2). Id. at 398 (1) (a). Conversely, while restitution of victims is

a "primary concern of the criminal justice system" (OCGA § 17-14-1), there exists no statutory authority imposing a duty to make restitution comparable to that found in child support legislation. Neither does there exist public policy regarding restitution comparable to that pertaining to the support of children who have been long recognized as "the wards of the court, the hope of the State, and the seed corn of the future." *Williams v. Crosby*, 118 Ga. 296, 298 (45 SE 282).

Clearly, the trial judge in his discretion can decline to order any restitution in the criminal sentencing process and make a written finding to this effect. See generally OCGA §§ 17-14-3; 17-14-8 (a) (1); 17-14-10. Restitution, if awarded, also can be less than a victim's damages (OCGA § 17-14-9), and does not bar any civil action against the offender (OCGA § 17-14-11). Thus, under the law and policy of this state and as recognized by our court in *Morrison v. State*, 181 Ga. App. 440, 441 (352 SE2d 622), *restitution was never even intended to be synonymous with civil damages.*

Further, in *Hudson*, supra, the Supreme Court observed that defendant had not commenced to serve his sentence — it being an unrevoked suspended sentence — and thus was distinguishable from *England v. Newton*, 238 Ga. 534 (233 SE2d 787), which involved a probated sentence, and *Entrekin v. State*, 147 Ga. App. 724 (250 SE2d 177), where the suspended sentence had been revoked. In the case at bar, unlike *Hudson*, appellant's sentence had commenced to run, a portion of the sentence was probated, and one of the conditions of the probation was restitution. Thus, we find the legal principles expressed in *England* and *Entrekin* more persuasive in this instance.

(c) It is a well-established rule that "once the defendant begins to serve his sentence it may not be increased." *England v. Newton*, supra at 536, citing *Inman v. State*, 124 Ga. App. 190 (183 SE2d 413); accord *Higdon v. Cooper*, 247 Ga. 746 (279 SE2d 451); *Howell v. State*, 160 Ga. App. 562 (287 SE2d 573); compare *Entrekin v. State*, supra, with *Turnipseed v. State*, 147 Ga. App. 735 (250 SE2d 186). Thus, "once a person has entered upon the execution of his sentence, the court is without power to change it by increasing the *punishment*." (Emphasis supplied.) *Inman v. State*, supra at 192 (1); accord *England v. Newton*, supra.

The question then arises as to whether an increase in the amount of restitution, even though a condition of probation, is an increase in *punishment* as argued by appellant, or is but an increase in a nonpunitive aspect of the probation portion of the sentence as argued by the State. In *Shelton v. State*, 161 Ga. App. 524 (2) (289 SE2d 768), although we recognized the imposed fine and restitution were special conditions of probation, we nevertheless characterized them as "punishments." This characterization is tacitly supported by restitution statutes. In apparent recognition of the punitive effect restitution can

have, the legislature requires the courts in determining the nature and amount of restitution to be imposed, if any, to consider the present financial condition of the offender and his dependents, the probable future earning capacity of these persons, and the goal of *rehabilitation* to the offender. OCGA § 17-14-10. Moreover, although the legislature promulgated specific statutory authority for the increase of child support "to be paid as a term and condition of the suspended sentence" (OCGA § 19-10-1 (j) (4), formerly OCGA § 42-8-34 (d) (4)), it has not attempted to vest courts with similar statutory authority in regard to increases in restitution to be paid as a condition of a probated sentence. Accordingly, we conclude the trial court erred when it increased the amount of restitution after appellant had begun to serve his sentence.

2. The majority, however, concludes that the increase in the amount of restitution did not constitute an impermissible increase or enhancement of defendant's punishment. I cannot agree with that view under the facts of this case. The victim lessee reported, in a victim impact statement, the loss of the following property allegedly left in the stolen car: a brief case (custom tapestry) ($450); a full length leather coat ($975); a crocodile purse ($400); a two-piece luggage set ($450); and a radar detector ($275). During the initial sentencing proceedings, the trial court, acknowledging "there is some dispute as to the amount of restitution," elected to schedule a subsequent restitution hearing. At the restitution hearing, the State announced that the victim lessee had "not shown up" and conceded that the amount of claimed restitution "had increased significantly" since the initial police report. The State and appellant thereafter entered a *stipulation*, which was accepted by the court, that the amount of the victim's loss was $600. On September 4, 1990, the trial court filed its order of restitution, signed August 29, 1990, ordering restitution in the amount of $600. On September 28, 1990, the victim lessee (who is not a party to this criminal action) filed a motion to modify the restitution order alleging that the lessor of the stolen vehicle had billed (and subsequently sued) the victim lessee for the cost of repairs of damages to the recovered stolen car. Interestingly, the motion does not assert that appellant and not the victim lessee damaged the car, although it does state the victim was in possession of the car for only four to six hours before it was stolen from the "nightclub parking lot." At the subsequent hearing, the trial court, after questioning the victim lessee's standing to intervene in the criminal case, ordered the State to argue the victim's motion to modify the restitution order. After hearing the State's argument, the trial court ruled that the restitution proceedings would be re-opened. At the re-opened proceedings, the victim lessee was not called as a witness; the only witness called was the claims administrator for the lessor rental car company who had

not previously sought restitution from appellant during the criminal proceedings. The claims administrator testified as to the repair costs of the car, the amount of rental income lost, and the amount which the rental car company received from the victim lessee's insurance company. He also testified that the car was held in the impound or towing lot for at least a week after it was recovered by the police before it was recovered by the lessor. Incidentally, no witness testified the vehicle was not damaged before it was stolen or that it was in the damaged condition testified to at the hearing at the time the police recovered it. The trial court ordered additional restitution payable to the victim (OCGA § 17-14-2 (9)) lessor rental car company in the amount of $2,296.30. In this case, the majority of the proceedings conducted has focused on the legality of ordering additional restitution, the disputed amount of restitution claimed, and apparently the question as to whom restitution should be paid. *A criminal case must come to an orderly close at some point in the proceedings*; yet, virtually, the entire trial process has been consumed by the conduct of proceedings attempting to resolve subordinate restitution issues. "Restitution serves [at least] two [distinct] purposes: (1) it reimburses the victim for his loss, and (2) it *sanctions* the defendant for his crime." (Emphasis supplied.) *Dorris v. State*, 656 P2d 578, 584 (9) (CCA Alaska). Restitution has been "long available as a sanction." *People v. Hall-Wilson*, 505 NE2d 584, 585 (CCA NY). A sanction is designed to secure enforcement of the law "by imposing a *penalty* for its violation or offering a reward for its observance." (Emphasis supplied.) Black's Law Dictionary (5th ed.) It is "a provision of a law enacting a penalty for disobedience or a reward for obedience." Webster's Encyclopedic Unabridged Dictionary of the English Language. A sanction also is "a mechanism of social control that *punishes* deviancy from . . . behavior existing in a society," and "a restrictive measure used to *punish* a specific action or to prevent some future activity." (Emphasis supplied.) Webster's Third New Intl. Dictionary. Thus, *as restitution also serves as a sanction of the criminal offender, when imposed it is inextricably linked to the punitive aspects of the offender's sentence*. Accordingly, this court properly characterized "restitution" as "punishment" in *Shelton v. State*, supra. Therefore, under the particular facts of this case, we conclude the trial court lacked authority to increase appellant's sentence by ordering *additional* restitution *after* the original restitution hearing had been conducted, the original restitution order filed, and the accused, *as appellant and the State both agree*, had commenced serving the imposed sentence. *England v. Newton*, supra; *Inman v. State*, supra; *State v. Bailey*, 701 SW2d 632 (3) (CCA Tenn.); compare *Entrekin*, supra. The position taken by the majority could, in the long term, rend the fragile fabric of criminal trial system by diverting lim-

ited judicial resources from the primary issues of an offender's guilt or innocence and from the adjudication of an *appropriate* punishment in the event of the offender's conviction, and by focusing these scarce resources on the time-consuming task of judicially refereeing contested restitution claims again and again during the course of the criminal proceedings. In the interests of both justice and judicial economy, I cannot endorse such a procedure.

3. It is also implicit in the holdings of my colleagues in the majority that under OCGA § 17-14-12 (Code Ann. § 27-3012), the trial court has the power to *modify* the restitution at any time while defendant is on probation. This position becomes apparent when it is noted that the final order of restitution was not issued in this case until November 9, 1990, a different term of the Superior Court of DeKalb County (OCGA § 15-6-3). However, this type of statute, while permitting a trial court to change or modify the terms of that portion of the sentence pertaining to restitution, does not authorize the trial court to *increase* the punishment imposed either in the same term or, as here, in another term of court, and after appellant has commenced serving his sentence. See *England*, supra at 536; *Turnipseed*, supra.

As recognized in *Inman*, supra at 192, it is considered a violation of the Fifth Amendment prohibition against double jeopardy for a court to increase the punishment once a person has entered upon the execution of his sentence. An increase in restitution is an increase of punishment, which would trigger the Fifth Amendment prohibition against double jeopardy when ordered after the accused has entered upon the execution of his sentence. *State v. Bailey*, supra; see *England*, supra; *Shelton*, supra. This court should not construe OCGA § 17-14-12 in such a manner as to authorize an unconstitutional act. See *Mansfield v. Pannell*, 261 Ga. 243, 245 (404 SE2d 104).

For the above reasons of law and conscience, although I concur in Division 1, I am compelled to dissent as to Division 2. I am authorized to state that Presiding Judge McMurray joins in this dissent.

DECIDED JULY 16, 1991 —
RECONSIDERATION DENIED JULY 31, 1991 —

*John O. Ellis, Jr.*, for appellant.
*Robert E. Wilson, District Attorney, Thomas S. Clegg, Michael D. Thorpe, Assistant District Attorneys*, for appellee.