A99A1651. BARNES v. THE STATE.
(521 SE2d 425)

ELDRIDGE, Judge.

On March 22, 1999, defendant-appellant Denise Barnes pled guilty to three counts of criminal trespass[1] for intentionally damag-

---

[1] Under OCGA § 16-7-21 (a), a person commits the offense of criminal trespass when she "intentionally damages any property of another without consent of that other person and the damage thereto is $500.00 or less."

ing property which belonged to her landlady. Following a restitution hearing on March 31, 1999, the trial court required Barnes to pay $780 in restitution to the victim. On appeal, Barnes challenges the amount of restitution.

The facts presented at the restitution hearing are as follows: In early August 1996, Minnie Kate McCrary agreed to rent a room in her home for $120 per week to Barnes and Barnes' boyfriend. Three weeks later, Barnes moved her two teenage boys into the home without McCrary's permission, and McCrary told Barnes that she did not have enough room for all four people. McCrary informed Barnes that Barnes would have to relocate but that, in the meantime, she would have to pay an additional $85 per week in rent for the boys to stay in a separate room. Barnes agreed, but did not make any other arrangements for housing. Barnes never paid rent for the boys and paid only a small portion of her rent during October and November. On October 14, 1996, McCrary gave Barnes a legal notice to vacate and, when Barnes still did not leave, filed a dispossessory warrant against Barnes in November. Barnes answered but did not appear at the hearing on the warrant. On December 4, 1996, McCrary won a default judgment against Barnes in the amount of $1,850 in unpaid rent.

Upon returning home the same day, McCrary was unable to get into her home because Barnes had broken off a key in the lock. When McCrary finally got into her home, she discovered that Barnes had placed a glue-like substance all over a mahogany dresser, the inside of a stove, and the hardwood floor. Barnes had taken a large paper clip and carved into the top of the dresser; glued the drawers shut, so that they would not open; and glued the dresser to the floor. The stove's heating element and the self-cleaning surface were ruined. The glue had eaten through the varnish of the floor.

McCrary contacted the police, who told her to take pictures of the damage and, if the damage exceeded $500, to swear out a warrant. McCrary swore out a warrant on December 7, 1996, and Barnes was arrested. After Barnes' arrest, she and McCrary went to mediation to resolve issues involving the amount of unpaid rent and property damage. Following mediation, on July 8, 1997, the parties agreed on the following: the amount of unpaid rent would be set at $1,123[2] and the property damage set at $1,445,[3] totaling $2,568; Barnes would be allowed to pay this off at a rate of $200 per month; and, if such payments were made in a timely manner, McCrary

---

[2] This amount was approximately $700 less than the default judgment for unpaid rent in the amount of $1,850.

[3] This amount was broken down as follows: $770 for furniture repair; $450 for floor repair; and $225 for damage to the stove.

would petition the trial court to drop the criminal trespass charges against Barnes. However, Barnes failed to make most of the payments and, by February 1999, had paid McCrary only $1,320 of the $2,568 owed, leaving a balance of $1,248. Barnes' prosecution went forward, and on March 22, 1999, Barnes pled guilty to three counts of criminal trespass. During sentencing, Barnes requested a restitution hearing.

At the restitution hearing, McCrary presented evidence regarding the value of the dresser, stove, and floor. As to the dresser, she opined that it would cost at least $770 to repair the dresser. This opinion was based, inter alia, on the fact that she took the dresser in her truck to three different furniture restoration businesses and the lowest repair estimate was $770. McCrary presented the trial court with written repair estimates from each company.

McCrary testified that she had had the hardwood floor refinished "about six or seven months" before Barnes moved in. She stated that, after the damage was inflicted, she had the floor sanded and refinished at a cost of $450 and presented a receipt therefor.

Regarding the stove, McCrary testified that the pre-damage, fair market value was $650, based upon the fact that it was only "a couple of months old" when Barnes moved in in August 1996 and that it cost $650 new, plus delivery and connection fees. She stated that she had contacted an appliance sales and service company and, following their instructions, had attempted to clean the surface without success. She replaced the heating coil at a cost of $48, but testified that, in her opinion, the stove could not be repaired to its pre-damaged condition.

Barnes did not testify at the hearing, but her counsel extensively cross-examined McCrary. Following argument by counsel, the trial court found that the preponderance of the evidence demonstrated that McCrary was entitled to $1,822 in restitution, broken down as follows: replacement of the stove at a cost of $602 ($650 minus the cost of $48 heating element); repair of the dresser at a cost of $770; and reimbursement for repair of the floor at a cost of $450. The trial court credited $670 to Barnes, which was approximately half of the amount she had paid under the mediation agreement, and ordered her to pay McCrary $1,152, plus 12 percent interest. However, the trial court subsequently reduced the restitution amounts to $500 for the dresser, $500 for the stove, and $450 for the floor, in order to comply with the valuation limitations of the criminal trespass statute, OCGA § 16-7-21 (a). Therefore, after crediting $670 to Barnes, the trial court ordered her to pay $780 to McCrary, with no interest attached. Barnes appeals from this order. *Held*:

1. In her first enumeration, Barnes claims that the trial court improperly based the amount of restitution upon inadmissible hear-

say testimony. This contention lacks merit.

In *Maddox v. State*, 157 Ga. App. 696, 697 (278 SE2d 480) (1981), this Court held that

> [t]he question of value is a matter of opinion, and as to questions of opinion, the witness may swear to his opinion or belief, giving his reasons therefor. One need not be an expert or dealer in the article, but may testify as to value if he has had an opportunity for forming a correct opinion. *The owner of property is considered to be qualified to state his opinion as to value.* Opinion evidence as to the value of an item, in order to have probative value, must be based upon a foundation that the witness has some knowledge, experience or familiarity with the value of the property or similar property and he must give reasons for the value assessed and also must have had an opportunity for forming a correct opinion. . . . The victim in this case proved her knowledge and familiarity with the items, and gave reasons for the value she assessed as to each item. *It is not objectionable that her opinion as to value might, in some cases, be based on hearsay.* Moreover, she did not purport to represent such hearsay as truth or fact, but used it to show the foundation or basis for her opinion. The credibility of this witness was for the trier of fact. The witness was thoroughly cross examined, particularly as to the bases for her opinions of value; if her testimony fell short of establishing the value, there was ample opportunity for the defendant to show it, and whether [she] did so was a question for the trier of fact.

(Citations and punctuation omitted; emphasis supplied.) See also OCGA §§ 24-9-65; 24-9-66; *Vitello v. Stott*, 222 Ga. App. 134, 136 (473 SE2d 504) (1996); *Loggins v. Mitchell*, 201 Ga. App. 358, 359 (1) (411 SE2d 98) (1991); *Dixon v. Williams*, 177 Ga. App. 702, 704 (340 SE2d 286) (1986); *B & L Svc. Co. v. Gerson*, 167 Ga. App. 679, 681 (307 SE2d 262) (1983) (valuations may be based in whole or in part on hearsay, and this would go to its weight, not admissibility); *Hoard v. Wiley*, 113 Ga. App. 328, 331-332 (1) (147 SE2d 782) (1966) (value is necessarily a matter of opinion, and such opinion is admissible as long as the witness provides the foundation underlying such opinion).

(a) In this case, contrary to Barnes' assertions, the trial court did not base its restitution amount for the dresser solely on the written repair estimates, but considered McCrary's testimony as owner of the property; her opinion as to *both* the cost of repair and the pre-damage, fair market value; and the photographs of the damaged

property that she submitted. See *Anderson v. Chatham*, 190 Ga. App. 559, 563 (3) (379 SE2d 793) (1989). The State admitted the written estimates in order to establish part of the basis of McCrary's opinion as to such costs, not as evidence going to the truth of the matter asserted. See OCGA § 24-3-1 (a); *Hurston v. State*, 194 Ga. App. 226 (390 SE2d 119) (1990). Therefore, there was no error as to the proof of damage to the dresser in this case.

As such, this case is distinguishable from *In the Interest of A. F.*, 236 Ga. App. 60 (1) (510 SE2d 910) (1999), wherein the victim did not give an opinion as to the amount of damages, but submitted only a repair estimate as proof. This was deemed inadmissible hearsay and, therefore, insufficient evidence to find beyond a reasonable doubt the element of the crime of criminal damage to property. Further, the case relied upon by Barnes, *Cardwell v. State*, 225 Ga. App. 337, 338 (484 SE2d 38) (1997), is also distinguishable. In that case, the victim's only evidence as to the value of a damaged, second-hand CD player was *not* the price he actually paid, but the original price allegedly paid for the item by an unidentified third party.

(b) As to the floor, McCrary testified as to the actual cost she paid to have it repaired. Such testimony is not hearsay. OCGA § 24-3-1 (a).

(c) Finally, contrary to Barnes' assertion, McCrary's opinion as to the value of the stove was not based upon the advice of the appliance service company, but was based upon her personal knowledge. She testified that she had purchased the stove for $650 plus costs approximately seven months before the damage was incurred. McCrary submitted photographs of the damaged property and testified about her efforts to salvage the stove. Such evidence demonstrates that McCrary had the opportunity to formulate an opinion about the value of the stove and amounts to more than a mere approximation of such value. See *Vitello v. Stott*, supra; *Maddox v. State*, supra. Compare *Lovell v. State*, 189 Ga. App. 311, 313 (375 SE2d 658) (1988). McCrary's failure to present purchase receipts for the property to support her assertions goes only to the weight, not the admissibility, of her testimony. Barnes' counsel also had full opportunity to cross-examine McCrary regarding the value and costs associated with the damaged property. See *Maddox v. State*, supra; *Hagin v. Powers*, 140 Ga. App. 300, 303 (2) (231 SE2d 780) (1976). There was no error.

2. In her second enumeration, Barnes contends that the trial court improperly based the amount of restitution for the stove on its replacement value, rather than its fair market value. Barnes relies on this Court's statement in *Cardwell v. State*, supra at 338, that "[f]air market value is the measure of such damages and it must be

determined exactly."[4] This enumeration lacks merit.

"One of the two primary goals of restitution is, as nearly as possible, to make the victim whole." *Garrett v. State*, 175 Ga. App. 400, 403 (2) (333 SE2d 432) (1985). Under the restitution provisions of OCGA § 17-14-2 (2), " '[d]amages' means all damages which a victim could recover against an offender in a civil action . . . based upon the same act or acts for which the offender is sentenced," with some exclusions not applicable herein. However, the "amount of restitution ordered may be equal to or less than, but not more than, the victim's damages." OCGA § 17-14-9. See also OCGA § 51-12-4; *Garrett v. State*, supra at 400. This Court has also held that "the sufficiency of evidence to support an order of restitution should be measured by the civil standard of preponderance of the evidence. [Cit.]" *Lawrenz v. State*, 194 Ga. App. 724, 725 (1) (391 SE2d 703) (1990).

In this case, McCrary testified that the July 1996 fair market value of the stove was $650. This testimony was based upon the fact that she had purchased the stove for $650, plus transportation and installation costs, "a couple of months" before Barnes moved in in August 1996. Therefore, at the time the stove was damaged in December 1996, it was approximately seven months old. In its amended order of restitution, the trial court found as a matter of fact that the stove could not be repaired to its pre-damaged condition and ordered Barnes to pay only $500 toward the cost of replacement. Cf. *Mercer v. J. & M. Transp. Co.*, 103 Ga. App. 141, 143 (2) (118 SE2d 716) (1961). The preponderance of evidence supports a determination that this reduction in value encompassed any depreciation in value that took place during the seven months of ownership. Compare *Revis v. State*, 223 Ga. App. 470, 471 (477 SE2d 880) (1996). Therefore, the same measure could be utilized as the minimum fair market value of the stove immediately prior to the damage inflicted by Barnes. Accordingly, there was no error.

3. Finally, Barnes contends that the trial court erred in failing to give her credit for $1,320 toward any restitution requirement. This figure represents the total amount that Barnes paid to McCrary pursuant to their mediation agreement, which addressed amounts owed by Barnes for *both* unpaid rent and property damage. Pursuant to OCGA § 17-14-6, the trial court considered the previously paid resti-

---

[4] We note that, in cases of property damage, a diminution in fair market value may be the most appropriate measure of damages and, therefore, restitution. However, to hold that such measure is appropriate in *all* restitution cases would be to ignore the statutory scheme established and the myriad measure of damages possible, depending upon the acts of the offender, how the property was disposed, any recovery, the condition of property recovered, and the type of property involved. *Garrett v. State*, 175 Ga. App. 400, 404 (333 SE2d 432) (1985).

tution in entering its order and determined that this restitution was to be credited equally to the unpaid rent and to the property damage that was the subject of the sentence herein. See also OCGA § 17-14-10 (5).

In her argument to this Court, Barnes cites to no authority that *requires* a trial court to credit the entire amount of previously paid restitution to any subsequent restitution order, and we have found none. See Court of Appeals Rule 27 (c) (2). Therefore, this Court holds that the decision regarding the amount of restitution to be credited to the defendant, if any, lies within the purview of the trial court and will not be reversed absent an abuse of discretion. See OCGA §§ 17-10-1 (a) (1); 42-8-35 (7). This rule is particularly applicable in a situation such as this, wherein other bases for restitution or compensation exist between the parties. Accordingly, this Court finds that the trial court did not abuse its discretion in calculating the amount of restitution to be credited to Barnes.

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED JULY 30, 1999.

*Maryann F. Blend*, for appellant.
*Gwendolyn R. Keyes, Solicitor, Ann S. Brumbaugh, Pilar Gigante, Assistant Solicitors*, for appellee.